## Forgy, et al. v. Rutledge.

(Decided December 3, 1915.)

Appeal from Daviess Circuit Court.

1. Appeal and Error—Appeal Prayed in Court of Appeals Under Act of March 17, 1914—In Discretion of Court to Grant—When Appeal Will Be Granted.—When an appeal is prayed in the Court of Appeals as provided by rule 20 of the court, adopted in conformity to the act of March 17, 1914, regulating appeals in civil cases when amount in controversy, exclusive of interest and costs, is as much as $200 and less than $500, it is in the discretion of the Court of Appeals to grant or refuse the appeal. If the Court of Appeals is satisfied from an examination of the record that the substantial rights of the appellant were prejudiced by error of the circuit court and that the ends of justice require the reversal of that court's judgment, it will grant the appeal.

2. Damages—Action for Personal Injuries—Error in Instruction Defining Measure of Damages—When Ground For Reversal.—In an action to recover for personal injuries, an instruction which, in defining the measure of damages, told the jury that the plaintiff was entitled to recover for injuries to his person, for physical and mental suffering and for permanent impairment of his power to earn money, was error. Where no special damages are claimed, such as loss of time, medical bills, etc., the damages of the person injured are to be measured by his pain and suffering and the permanent impairment of his power to earn money.

3. Highways—Motor Vehicles—Act of March 23, 1910—Public Highway Passing Through City—Speed of Motor Vehicle Thereon.—The act of March 23, 1910, entitled, "Motor Vehicles," is applicable to the running of such vehicles on the streets of a city or town. By the words "public highway" as used therein, the legislature in-

tended to include street, where the public highway is spoken of as being within the corporate limits of a city or town. A public highway is not necessarily a street, but a street is necessarily a public highway, because used for public travel. When a public highway reaches the corporate boundary of a city or town and connects with a street thereof, in passing through the city or town from such point of connection it becomes a street of the municipality and subject to its authority, and continues a street and subject to such authority until some other part of the corporate boundary of the city or town is reached, beyond which it again becomes a public highway other than a street. So, in regulating the speed at which an automobile should be operated on a public highway passing through a city or town, the act regulates the speed at which it shall be operated on a street of the city or town.

LOUIS I. IGLEHEART for appellants.

LaVEGA CLEMENTS and BIRKHEAD & WILSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, James W. Rutledge, recovered in the court below a verdict and judgment against the appellants, J. M. Forgy and Rice G. Jesse, for $300.00 by way of damages for personal injuries, caused, as alleged in the petition, by their negligence in running against him, on a street of the city of Owensboro, an automobile owned by them and which they were at the time, as further alleged, operating at an unusual and dangerous rate of speed. The verdict was returned and judgment entered March 12, 1914. Appellants in due time filed a motion and grounds for a new trial and the motion was overruled March 19, 1914, at which time they prayed an appeal, which, by an order then entered, the circuit court granted.

The appeal thus granted was not prosecuted, but on February 13, 1915, appellants filed a transcript of the record in the office of the clerk of this court and therewith filed and entered a motion and prayer for an appeal in this court, as provided by rule 20 thereof, adopted in conformity to the Act of March 17, 1914, "Regulating appeals in civil cases when amount in controversy, exclusive of interest and costs, is as much as $200.00 and less than $500.00." The motion of appellee to dismiss the appeal cannot be sustained and is therefore overruled, because when made no appeal had been granted by this court.

As the act of March 17, 1914, had not become effective when appellants were granted an appeal in the circuit court, they were entitled, as a matter of right, to rely upon that appeal had they filed in the office of the clerk of this court a transcript of the record twenty days before the second term thereof intervening after the granting of the appeal by the circuit court; but failing to do this, they lost the right to rely on or prosecute the appeal granted in the circuit court, which must be treated as having been abandoned by them. Therefore, the question whether the appeal now prayed in this court should be granted is controlled by the act of March 17, 1914, which became effective ninety days after that date and was in force when the motion therefor was made in this court. Ockerman v. Woodward, 162 Ky., 124; Gough v. I. C. R. Co., 166 Ky., 568. So, the question first to be determined is, whether the appeal prayed in this court shall be granted ,and as our examination of the record satisfies us the substantial rights of the appellants were prejudiced by error of the circuit court in instructing the jury, and that the ends of justice require the reversal of its judgment, we think it proper to grant the appeal prayed by them in this court, which is done accordingly.

Two grounds are urged by appellants for the reversal of the judgment: (1) That the verdict is flagrantly against the evidence: (2) that the trial court erred in instructing the jury. The first of these grounds is without merit. It chiefly rests upon the theory that appellants were not sufficiently identified as the persons who owned or were operating the automobile at the time it struck and injured the appellee. It is sufficient to say that at least one witness positively identified the appellant, Forgy, as an occupant of the automobile, and he and the appellant, Jesse, were further seen by another witness to be in the machine that afternoon shortly before the injury was inflicted. It is true, appellants themselves testified that their automobile did not run against or injure appellee, and in this they were corroborated by at least one other witness; but it was for the jury to determine the truth of the matter from all of the evidence presented, and as it cannot be said that there was no evidence to support the verdict, we are not at liberty to disturb it on the ground urged.

The second complaint must be sustained as to instruction No. 1, which is incorrect in one particular. In defining the measure of damages it improperly allowed a recovery for the physical injuries sustained by appellee, in addition to physical and mental suffering, and further allowed a recovery for permanent impairment of his ability to earn money. As thus worded, the instruction might well have been understood by the jury as permitting them to allow double damages for the injuries sustained. Such an instruction has been expressly condemned by this court in a number of cases. Thus in N. C. & St. L. R. Co. v. Henry, 158 Ky., 88, it is said:

"Instruction No. 2 on the measure of damages is erroneous. It will be observed that after authorizing a recovery for special damages by way of physicians' and medical bills and lost time, it further authorizes a recovery 'for injuries to his person and for physical and mental suffering, if any of either, suffered on account of said injuries, and for permanent injury to him, if any, lessening his power to earn money.' Where a person is permanently injured, he may, in addition to special damages, which must be alleged and proved, recover for the physical and mental suffering, and the permanent reduction of his power to earn money. In other words, the injuries to his person are measured by his pain and suffering, and the permanent reduction of his power to earn money. It is not contemplated that he shall receive damages 'for injuries to his person,' and in addition thereto damages for physical and mental suffering, and for the permanent reduction of his power to earn money. To do so is necessarily to allow double damages. We have frequently had this question before us, and have invariably held that an instruction similar to the one in question is erroneous. L. & E. R. Co. v. Crawford, 155 Ky., 727; L. & N. R. Co. v. Logsdon, 114 Ky., 746; N. C. & St. L. R. Co. v. Banks, 156 Ky., 609." L. & N. R. Co. v. Moore, 150 Ky., 692; L. & E. Ry. Co. v. Crawford, 155 Ky., 723.

On another trial the instruction as to the measure of damages should be made to be read as follows:

If the jury find for the plaintiff they should allow him such a sum in damages as will reasonably and fairly compensate him for his physical and mental suffering, if any of either, for the loss of time, if any, and such permanent impairment, if any, of his power to earn

money as may have resulted to and been directly caused him by the negligence of the defendants complained of, if there was such negligence, but the damages altogether, if any are allowed the plaintiff, should not exceed the amount claimed in the petition, viz.: five thousand dollars.

Appellants also complain of so much of instruction No. 3 as told the jury that appellants should not have operated the automobile at a greater rate of speed than fifteen miles an hour; it being their contention that the law declaring that motor vehicles shall not be run at a greater rate than fifteen miles an hour refers to their use on public highways or roads outside of the corporate limits of a city or town and has no application to the operation of such machines on the streets of a city or town, citing in support of this contention the case of Webb v. Moore, 136 Ky., 708, in the opinion of which it is said:

"Section 2739g of the Kentucky Statutes, regulating the running of motor vehicles on public highways, does not apply to the operation and use of automobiles in incorporated cities and towns."

The opinion was based upon an act of March 26, 1904, entitled: "Motor Vehicles," (Ky. Statutes 1909, section 2739g), sub-section 8 of which made its provisions inapplicable to the operation or use of automobiles or other motor vehicles within incorporated cities or towns. The act of 1904 was, however, repealed by that of March 23, 1910, and that of 1910 repealed by an act of March 20th, 1914, but at the time appellee sustained the injuries complained of the act of 1910 was in force, and its provisions must control this case. The act of 1910, unlike that of 1904, contains no declaration making its provisions inapplicable to the operation of motor vehicles on the streets of cities and towns.

Section 9 of the act provides:

"No person shall drive a motor vehicle or motor bicycle upon any public highway in this State at a speed greater than is reasonable and proper, having regard to the traffic and use of the highway or so as to endanger the life or limb or injure the property of any person.

"If the rate of speed of any motor vehicle or motor bicycle operated upon any public highway in this State where the same passes through the closely built up business portions of any incorporated city, town or village

exceed ten (10) miles an hour for a distance of ⅛ of a mile, or if the rate of speed of any motor vehicle or motor bicycle operated upon any public highway in this State where the same passes through the residence portions of any incorporated city, town or village exceeds fifteen (15) miles an hour for a distance of ⅛ of a mile, or if the rate of speed of any motor vehicle or motor bicycle operated on any public highway of this State outside of the closely built up business portions and the residence portions of any incorporated city, town or village exceeds twenty (20) miles an hour for a distance of ¼ of a mile, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle or motor bicycle is running at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the way or so as to endanger the life or limb or injure the property of any person. If the rate of speed of a motor vehicle or motor bicycle operated on a public highway in this State in going around a corner, curve, or crossing a highway, where the operator's view of the road traffic is obstructed exceeds eight (8) miles an hour, such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle or motor bicycle is running at a rate of speed greater than is reasonable, having due regard to the traffic and use of the way or so as to endanger the life or limb or injure the property of any person.''

It will be observed that this section makes no distinction between a street and a public highway in or passing through a city or town. It does make a distinction in fixing the maximum rate of speed at which motor vehicles shall be operated on a public highway outside of the city or town and the maximum speed at which such machines shall be operated on a public highway within the corporate limits of the city or town. As to the rate of speed of such vehicles on the public highway within the city or town, it makes no distinction between the business and residence portions of the city or town; but neither in section 9 nor any other section of the act, *supra,* is there any attempt to regulate the speed of motor vehicles upon the streets by naming them as such. It is, however, provided in section 11 of the act that nothing therein ''shall be construed as affecting the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor

vehicles which are used within their limits for public hire.'' It is not claimed in this case that at the time appellee was injured there was any ordinance of the city of Owensboro regulating the speed at which the owner or hirer of an automobile should operate same. So, in passing on the question here involved we have not considered what effect the existence of such ordinance would have had upon the rights of the parties.

In view of the language of the act, we are of opinion that by the use of the words ''public highway'' the Legislature intended to include street, where the public highway is spoken of as being within the corporate limits of a city or town. A public highway is not necessarily a street, but a street is necessarily a public highway because used for public travel, and a public highway cannot pass through a city or town without running over a street. When a public highway reaches the corporate boundary of a city or town and connects with a street thereof, in passing through the city or town, from such point of connection, it becomes a street of the municipality and subject to its authority, and continues a street and subject to such authority until some other part of the corporate boundary of the city or town is reached beyond which it again becomes a public highway other than a street.

It may further be remarked that whenever the words ''public highway'' appear in the act they are immediately preceded by the word ''any,'' the use of which is evidently to indicate that *any* kind of a highway lawfully dedicated to public use, whether it be a state road, county road, street or alley, is a ''public highway'' in the meaning of the act.

We are not inclined to regard instruction No. 3 open to the objection made to it by appellants. In advising the jury that the maximum speed at which appellants might have operated their automobile on the street where the accident occurred was fifteen miles an hour, the instruction appears to conform to a requirement of section 9 of the act of 1910, which, in effect, fixes fifteen miles an hour as the maximum speed of such motor vehicle when ''operated upon any public highway in the State, where the same passes through the residence portion of any incorporated city, town or village.'' In further providing, as it does, that if the rate of speed at which the motor vehicle is operated on any public

highway where it passes through a residence portion of an incorporated city, town or village, exceeds fifteen miles an hour for a distance of one-eighth of a mile, ''such rate of speed shall be *prima facie* evidence that the person operating such motor vehicle  *  *  * is running at a rate of speed greater than is reasonable and proper, having regard for the traffic and the use of the way or so as to endanger the life or limb or injure the property of any person,'' the section, *supra*, merely declared a rule of evidence, and not that a rate of speed in excess of fifteen miles an hour must continue for as much as one-eighth of a mile to constitute a violation of the maximum speed of fifteen miles an hour fixed by the act. The motor vehicle must, however, continue to run one-eighth of a mile at a rate of speed in excess of fifteen miles an hour to make the operator *prima facie* negligent, but such *prima facie* or presumed negligence may, however, be rebutted or overthrown by other evidence. On the other hand, the fact that fifteen miles an hour was the maximum speed permitted by the act in question would not, if that rate of speed was not reached by appellants in operating their automobile, prevent a recovery by appellee, if they were otherwise so negligent in operating it as to have caused his injuries.

The jury were not advised by the instruction that they should find for appellee if they believed from the evidence the automobile was being operated at a greater rate of speed than fifteen miles an hour, but that as a matter of law it should not have been run at a greater speed than fifteen miles an hour. The meaning of the instruction as a whole was that the speed of the automobile, whether greater or less than fifteen miles an hour, was to be considered by the jury in connection with the other evidence in the case, in determining whether it was operated by appellants with reasonable care, having regard for the traffic and use of the street and its condition and the safety of persons who might be on it.

We see no force in appellant's further complaint of instruction No. 3, advising the jury that it was appellants' duty to give appellee warning of the approach of the automobile by signal with a horn, bell or other device. In support of this contention it is argued that the act of 1910 contains no provision requiring the giving of such signals. It is true that the act contains no express requirement that such signals shall be given, but it is

provided in section 8 thereof that "every motor vehicle while in use on a public highway shall be provided with good and sufficient brakes and also with a suitable bell, horn or other signal device  *  *  * " We can imagine no use to which a bell, horn or other signal device attached to an automobile could be put, except to give suitable signals of the approach of the machine where such signals would be necessary for the safety of persons traveling upon the public highway, and manifestly the necessity for their use on the streets of a city or town is greater than in the country. The necessity for their use is implied from the provision requiring motor vehicles to be supplied with them. This proposition is too plain for argument.

We do not understand that appellants make any objection to instructions Nos. 2 and 4. No. 2 submits to the decision of the jury the question whether appellee, in the matter of receiving his injuries, was guilty of contributory negligence, and properly defines such negligence. No. 4 properly told the jury that if appellants did not own or were not operating the automobile by which appellee was struck and injured, they should find for them; or if they believed from the evidence that appellants owned the automobile, but that it did not strike appellee, they should likewise find for them.

The only prejudicial error appearing in the instructions is found in so much of instruction No. 1 as attempted to define the measure of damages, and because of that error the judgment is reversed and cause remanded for a new trial consistent with the opinion.