## Moore v. Hart.

(Decided October 26, 1916.)

## Appeal from Nelson Circuit Court.

1. Highways—Action For Injury Produced by Automobile—Registry of Machine—Negligence.—In a suit to recover damages for injuries produced by an automobile on the public highway, through an alleged negligent collision from the rear, and where the defense is a denial of the collision, as well as of negligence, evidence that the plaintiff's machine was not registered, as required by section 2739 of the Kentucky Statutes, as well as evidence that the plaintiff's chauffeur was not licensed, as required in said section, is incompetent as having no tendency to disprove the collision, which is the issue in the case.

2. Highways—Action for Injury Produced by Automobile—Registry of Machine.—The fact that plaintiff's machine was not registered, as required by section 2739 of the Kentucky Statutes, or that his chauffeur was not licensed, as required by such section, is no defense to an action brought by plaintiff to recover damages for a wrongful collision on the highway.

3. Highways—Action for Injury Produced by Automobile—Evidence. —Plaintiff was operating an automobile passenger truck for hire, and was on the right hand side of the road, standing on the rear steps of his automobile truck, his hand holding to each side thereof, when the alleged collision occurred whereby he sustained injuries to his person. The fact that he was thus riding his automobile truck, although he might have secured a safer place on it, constitutes neither a defense to the action, nor is it admissible in evidence to establish contributory negligence on his part.

4. Highways—Automobiles—Regulation of Speed—Instruction.—Subsection 9 of the section of the statute mentioned fixes the maximum rate of speed for automobiles at the different places therein mentioned, and makes it prima facie evidence of negligence if that speed is exceeded; held, that it was proper for the court to instruct the jury that such excessive speed constituted negligence on behalf of defendant, and that in such event they should find for the plaintiff, unless they should believe from the evidence that notwithstanding such excessive speed the defendant was not negligent, as the statute casts the burden on the defendant to disprove negligence after he is shown to have been traveling at a rate of speed exceeding that prescribed by the statute.

5. Highways—Injury Produced by Automobile—Evidence.—The jury should not be permitted to receive any evidence except during the trial; but where two of the jury, during adjournment, observed and slightly noticed the defendant's machine, not knowing at the time whose it was, and without comment, and some six months subsequent to the time of the collision, such an indiscretion, if it be one, cannot be regarded as prejudicial error.

6.  Highways—Injury Produced by Automobile—Negligence.—Where
    there is no evidence of plaintiff's negligence, or that of his chauf-
    feur, and the issue is collision or no collision, it is improper to
    introduce evidence, either as to the chauffeur's competency or his
    incompetency, as this can have no probative force upon the fact
    as to whether there was or not a collision.
7.  Damages—Impairment of Earning Power—Evidence.—Although
    there is no evidence as to plaintiff's earning capacity, if he is a
    person who, under the evidence, is shown to be capable of earn-
    ing, this will justify an instruction authorizing damages for the
    impairing of his power to earn money, it not being necessary to
    show that he was actually earning money.
8.  Damages—Punitive Damages.—Where the evidence for plaintiff
    shows only a failure on the part of defendant to exercise ordinary
    care the jury should not be authorized to return punitive damages,
    as it is only where defendant's negligence manifests a wanton
    disregard of the lives or safety of others, or is wilful or malicious,
    that punitive damages are allowed.

JOHN S. KELLY, R. C. CHERRY and VICTOR L. KELLY for
appellant.

NAT W. HALSTEAD and OSSO W. STANLEY for appellee.

Opinion of the Court by Judge Thomas—Reversing.

Appellee was the owner of a passenger automobile
truck, and at the time he sustained the injuries for which
he sues in this case he was traveling north from Bards-
town to the Nelson County fair grounds, on the Louis-
ville and Bardstown turnpike, and while passing the
point where the Lancaster pike comes into the Louisville
pike from the west, he claims that the appellant negli-
gently and carelessly approached his automobile truck
from the rear, and in passing it struck his machine, caus-
ing it to fall over into a ditch about ten inches deep run-
ning alongside the east edge of the pike upon which he
was traveling, and causing same to careen and strike a
post upon which was attached a mail box, which was lo-
cated very near the ditch; that his right hand was caught
between the side of the top of his machine and the post,
causing his fingers and muscles to be bruised and crushed,
and, as he claims, resulted in permanently injuring and
almost completely destroying that hand.

The negligence charged in the petition is that defend-
ant negligently failed to have his automobile under con-
trol, and that he was operating same at a much greater
rate of speed than was reasonable and proper, and more

than twenty miles per hour, and at a high and dangerous rate of speed; that he did not give any warning or signal of any character as he approached the plaintiff or before the alleged collision, and that he wrongfully drove his machine upon the right hand side of the pike when he should have remained upon the left side. The impact is claimed to have been made with the right front wheel of defendant's machine against the left front wheel of the plaintiff's truck, or with some part of it at that point.

The answer consists of three paragraphs, the first being a general denial, including a denial of the collision itself, as well as the negligence complained of; the second is a plea of contributory negligence on behalf of the plaintiff, which contributory negligence, as therein specified, is that plaintiff was negligent in the position which he was occupying on his machine at the time, it being that he was standing on the rear steps leading to the entrance of his machine, with one hand holding to the right corner of the top of his machine, and the left hand holding to the left corner thereof; that plaintiff's machine was, because of its peculiar steering gear, hard and difficult to control, and that it was being operated at the time by an incompetent chauffeur. The third paragraph set up the fact that plaintiff's machine had not been registered, as required by subsection 2 of section 2739 of the Kentucky statutes, nor had his chauffeur, who was at the time employed by him for compensation, been licensed, as required by subsections 19 and 20 of the same section, and that plaintiff had violated the provisions of subsection 24 of that section by employing an unlicensed chauffeur. A demurrer was filed to the third paragraph of the answer, and sustained by the court, to which an exception was reserved. The matters relied on in paragraphs two and three of the original answer were, in substance, incorporated into an amended answer, but all of its allegations with reference to plaintiff's chauffeur not being licensed, or his machine registered, were, upon motion of the plaintiff, stricken from the pleading, and exceptions reserved to this ruling of the court. A reply completed the pleadings, and upon trial before a jury the plaintiff was awarded a verdict of $2,500.00, upon which judgment was rendered. Failing to obtain a new trial, defendant prosecutes this appeal.

The motion for a new trial contains fourteen objections to the judgment, but, as presented upon this appeal,

the errors may be sifted down to the following: First, because of error of the court in declining to permit defendant to plead in bar of the action the failure of plaintiff to register his machine, or the failure of the chauffeur to be licensed. Second, that the court erred in admitting evidence to be introduced offered by the plaintiff, and in refusing to admit evidence offered by the defendant. Third, because of the failure of the court to properly instruct the jury. Fourth, because of misconduct of plaintiff's counsel during his closing argument to the jury; and, Fifth, because of misconduct of some of the jury during the progress of the trial, and before the rendition of the verdict. As briefly as possible we will consider these five points urged before us in the order mentioned. Before doing so it might be necessary to say that the proof for plaintiff shows that he was traveling with his machine on the right hand side of the pike, with his right hand wheels within about twelve inches of a small ditch, about ten inches deep, on that side of the pike; that the defendant gave no signal with a horn, whistle or other device as he approached and attempted to pass the plaintiff, and that he was operating his machine at a speed of some twenty-five to thirty-five miles per hour; that just north in front of plaintiff there were parties in vehicles, coming, meeting him, who were traveling on the west side of the pike, or to the left of plaintiff; that defendant in attempting to pass him and his machine at a point just to the rear of it, or about the rear, turned diagonally to the right, carrying him in the direction of plaintiff's machine, and that he struck some portion of it near the front on the left hand side with some portion of defendant's machine near the front, on the right hand side, causing the plaintiff's machine to immediately careen or turn over and strike the post located near the ditch. There were some eight or ten passengers in plaintiff's machine at the time.

Defendant's testimony showed that he was traveling at a rate of speed not exceeding fifteen miles per hour, and that he passed the plaintiff some two hundred and fifty feet south of the point where the Lancaster pike enters into the automobile pike, and that far south of the point where the Lancaster pike enters into the Louisville pike, and that far south of the point where plaintiff and his witnesses claim the collision occurred; that he did not at that place, or at the place where plaintiff claims that

he did, or at any other place, collide with the plaintiff's machine. He furthermore shows by some two or three witnesses besides himself that after he arrived at the fair grounds, and some thirty minutes or more thereafter, having heard of the pretended collision, and that he was accused of producing it, they examined defendant's machine and found no scars thereon, or any indications of any character of collision.

Returning now to the grounds urged for a reversal: It is vigorously insisted that the plaintiff was operating a machine on the public highway when it was not registered, and had in his employ an unlicensed chauffeur, both of which were in open violation of the statutory law of this State, and that these violations made him a trespasser upon the highway, and himself and his machine, in the language of defendant's counsel, "under the ban of the law" continuously while on the highway, and that these violations constituted negligence *per se* on his part, depriving him of any right of action for injury to himself or to his machine, and which violations constitute a complete defense to this suit. Strange as it may seem, we are furnished with authority for this cruel and almost savage doctrine. It seems that the courts of Massachusetts give to such violations the force and effect contended for by the defendant in this case, and we are referred to the case of Chase v. N. Y. Central R. R. Co., 208 Mass. 137, as sustaining the doctrine contended for. In that case the plaintiff was riding in an unregistered automobile which collided with a train of the defendant, producing the injuries sued for, and a recovery was denied because the machine was unregistered. The court, in disposing of the case, to the chagrin of the plaintiff and his counsel, says:

"Under the decisions, the operation of the unregistered automobile is deemed to be unlawful in every feature and aspect of it. Everything in the conduct of the operator that enters into the propulsion of the vehicle is under the ban of the law. In going along the way and entering upon the crossing the machine is an outlaw. The operator, in running it there, and thus bringing it into collision with the locomotive engine, is guilty of conduct which is permeated in every part by his disobedience of the law, and which directly contributes to the injury by bringing the machine into collision with the engine. He is within the words of the statute. He is in no better con-

dition to recover than a person would be who was violating the law by walking on the track of a railroad, and was struck by an engine when he had reached the crossing of a highway.''

The same doctrine seems to be adhered to by that court in the case of Dudley v. Northampton St. Ry. Co., 23 L. R. A. (N. S.) 561; Dean v. Boston Elevated R. R. Co., 217 Mass. 495, it being held in the last-named case, in substance, that all occupants of the unregistered machine were trespassers upon the highway, and are entitled to no consideration from other travelers except to be protected from reckless or wanton injury. We have been unable to find any other court going to this extent, although some of them hold that under certain circumstances, and under the peculiar facts of the particular case, evidence of the machine being unregistered, or the chauffeur being unlicensed, may be introduced as evidence under the plea of contributory negligence, a question which we shall hereafter consider under the peculiar facts of this case. On the contrary, the courts of Minnesota, Alabama, Illinois, Pennsylvania, Florida, Kansas, Virginia, and perhaps others, do not give to such violations of the statute so broad and what might be called destructive effect as does the Massachusetts court. In Berry on Automobiles, second edition, section 195, the author in discussing the point under consideration with reference to the failure of the chauffeur to have obtained a license, says:

''And the operating of an automobile without a license, when one is required by law, is evidence of negligent operation, but does not affect the rights of such person, nor of those riding with him, as travelers, nor bar their right of action or defense in personal injury actions; such persons not being rendered thereby trespassers upon the highway.''

The case of Armstead v. Lounsberry, 56 L. R. A. (N. S.) 628, is a Minnesota case (129 Minn. 34), and is one growing out of a collision between two automobiles going in opposite directions, which, in this particular, makes it unlike the one we have here, but this fact can have no bearing upon the question now under consideration, which is, whether a failure to comply with the law shall constitute a *bar* to the action. The plaintiff in that case had failed to register his machine, as required by the laws of Minnesota, and the defendant contended that he thereby

became a trespasser upon the street and was entitled to no duty from the defendant except the latter should avoid wilfully or wantonly injuring him. It was also shown that in that case the city of Duluth, where the accident occurred, had passed an ordinance requiring all operators of machines to be licensed, and that the plaintiff had not, at the time of the accident, complied with this law. Neither of these violations was permitted to defeat the action, and the court, in the course of the opinion, so forcefully states the reasons that should govern the courts in denying the comprehensive effect of such violations as was insisted upon, that we feel authorized to take therefrom the following:

"The right of a person to maintain an action for a wrong committed upon him is not taken away because he was at the time of the injury disobeying a statute law which in no way contributed to his injury. He is not placed outside all protection of the law, nor does he forfeit all his civil rights, merely because he is committing a statutory misdemeanor. The wrong on the part of plaintiff which will preclude a recovery for an injury sustained by him must be some act or conduct having the relation to that injury of a cause to the effect produced by it. Sutton v. Wauwatosa, 29 Wis. 21, 9 Am. Rep. 534; Philadelphia W. & B. R. Co. v. Philadelphia & H. de G. Steam Towboat Co., 23 How. 209, 16 L. ed. 433. Plaintiff's violation of the law, in order to affect his case, must, like any other act, 'be a proximate cause in the same sense in which the defendant's negligence must have been a proximate cause in order to give any right of action.' 1 Shearm. & Redf. Neg. 94. A collateral unlawful act not contributing to the injury will not bar a recovery. Hughes v. Atlanta Steel Co., 136 Ga. 511, 37 L. R. A. (N. S.) 547, 71 S. E. 728, Ann. Cas. 1912C, 394, L. N. C. C. A. 429.

"Plaintiff's violation of law in this case is of this collateral character. There was no relation of cause and effect between the unlawful act and the collision. The registration of plaintiff's automobile was of no consequence to defendant. The law providing for such registration was not for the prevention of collisions and had no tendency to prevent collisions. There is no pretense that the registration of plaintiff's automobile would have had any tendency to prevent this collision. Plaintiff's failure to obey the law in no way contributed to his injury, and

could not bar his right of recovery. This rule is sustained by the great weight of authority. Birmingham R. Light and P. Co. v. Aetna Acci. & Liability Co., 184 Ala. 601, 64 So. 44; Hemming v. New Haven, 82 Conn. 661, 25 L. R. A. (N. S.) 734, 74 Atl. 892, 18 Ann. Cas. 240, 126; Hughes v. Atlanta Steel Co., *supra;* Atlantic Coast Line R. Co. v. Weir, 63 Fla. 74, 41 L. R. A. (N. S.) 307, 58 So. 641, Ann. Cas. 1914 A. 126; Crossen v. Chicago & J. Electric R. Co., 158 Ill. App. 42; Luckey v. Kansas City, 169 Mo. App. 666, 155 S. W. 873; Shaw v. Thielbahr, 82 N. J. L. 23, 81 Atl. 497; Hyde v. McCreary, 145 App. Div. 729, 130 N. Y. Supp. 269; Yeager v. Winton Motor Carriage Co., 53 Pa. Super Ct. 202; Elliott, Roads & Streets, 1115.''

The court then proceeds to a consideration of the rule as announced in Massachusetts, and concludes by saying: ''It appears to us the weight of argument, as well as the weight of authority, is against the rule of the Massachusetts cases, and in accordance with the rule we have above laid down.'' Without encumbering this opinion, it is sufficient to say that the opinions of the courts to which we have referred are in accord with the Minnesota court upon this subject, and were we content to rest our opinion alone upon the greater weight of authority, we would be compelled to disregard the rule as laid down in Massachusetts, and to adopt that prevailing in the other states. But, aside from the weight of authority, we would be unable to agree with the rule as announced in Massachusetts, as it evidently sounds a discordant note to our conceptions of the very basic principles of the law which we learn from the earliest writers are founded on reason and right. For the purposes of this case we do not have to decide whether the statute requiring the licensing of a chauffeur in this State, or the registering of machines is one of revenue, only, or one looking to the qualifications of the chauffeur and safety of the traveling public upon the highway, because if it should be regarded as partaking of both, or the latter alone, a violation of it does not render the violator an outlaw, nor deprive him of all consideration dictated by the plainest principles of humanity, nor can the fact that the statute has not been complied with in these respects affect his cause of action, unless such violation has some causal connection with the producing of the injury. In other words, the violations must be the proximate cause

of the injury. It is not only so stated in the Minnesota case from which we have quoted, but is recognized everywhere, and by an unbroken line of decisions by this court, the last case being that of Louisville and Nashville R. R. Co. v. Hulette, 171 Ky. 500; we therefore conclude that there was no error committed in denying to this defensive plea the effect contended for.

Second. In considering this objection, it may be said that the evidence introduced by plaintiff complained of consisted chiefly in that testified to by witnesses to the effect that they had previously ridden in machines operated by the same chauffeur as was plaintiff's machine at the time, and that they considered him to be a competent and careful chauffeur; and the further evidence that the defendant did not give any signal of the approach of his machine to the machine of the plaintiff at the time of the accident. The evidence offered by the defendant which was refused, and of which complaint is made, consists chiefly in declining to permit defendant to show that plaintiff's machine was unregistered and his chauffeur was unlicensed. The testimony offered as to the competency of the chauffeur was improperly admitted. In the first place it is not shown that the witnesses were qualified to testify upon this subject, and in the second place, under the facts of this case, the competency or incompetency of the chauffeur can have no relevancy upon the only issue having to do with plaintiff's liability, namely, the collision. If there was no collision, as he contends, there is no liability, it matters not how negligent the chauffeur may have been, or how careful he may have been. The only conceivable relevancy that such testimony could have in the case is to refute the idea of contributory negligence. But this plea is one which is predicated upon the idea that the defendant was negligent, and the latter cannot be negligent when he is not guilty of the act of which the plaintiff complains. If the injuries had been produced by an admitted collision, and there was a controversy as to which party was at fault, the competency or incompetency of the chauffeur might throw some light upon the subject, and could be argued with some plausibility as being relevant under the plea of contributory negligence. It is entirely different, however, under facts such as we have here, where the collision itself is denied, and there is no pretense that any such alleged collision was produced

by any negligence of the driver of the plaintiff's ma-
chine; neither is there any evidence in this case to show
that the chauffeur was actually incompetent.  On the
contrary, it is admitted that he was on the right side of
the road, and no fault is attempted to be found of his
management of the machine at the particular time which
plaintiff claims the accident occurred.  If, forsooth, by
some oversight, or even mismanagement on the part of
the chauffeur, the machine was driven into the ditch, fol-
lowed by the consequent injury, the defendant is not
liable if he did nothing to bring about the result.  It is
his contention that there was no collision, while the
plaintiff contends to the contrary, and the evidence was
directed to this issue of collision or no collision.  If the
acts complained of did not happen, neither the plaintiff,
nor any one connected with him, could contribute to a
non-happening event; for these reasons the evidence as to
the competency of the chauffeur was improperly ad-
mitted, and for the same reasons, coupled with the
further one that the machine not being registered was
in no way the proximate cause of the injury, the offered
evidence that the machine was not registered, or the
chauffeur not licensed, was properly refused.  This will
not prevent the defendant from showing that as a mat-
ter of fact the machine was run into the ditch and the
injury produced, but without any collision, or any fault
on his part.  But the evidence which we have considered
is too remote to have any bearing upon the establish-
ment of this fact.  It is contended that the requirement
of the statute with reference to signals applies only to
instances of overtaking vehicles drawn by animals, and
of pedestrians; that it has no application when approach-
ing another machine.  While the statute requiring the
signals to be given does not include instances of ap-
proaching other machines, we do not think the require-
ment should be limited to the very terms of the statute.
If there were no statute upon the subject, the common
law rule would require those operating automobiles on
the highway to exercise ordinary care to prevent col-
lisions.  If the defendant's machine is equipped with
signaling devices, and he should fail to give warning of
his approach by a proper signal, and a collision should
occur producing damages, it would not be difficult to
conclude that ordinary care demanded that signals
should have been given.  It is also the undoubted rule in

the law of negligence that the precautions required by the statute, if there is one governing the subject, are not the only ones which should be observed in order to exercise ordinary care. Many cases, particularly those growing out of the operation of railroad trains, could be cited in support of this proposition. But this question was presented and determined by this court adversely to defendant's contention in the case of Forgy v. Rutledge, 167 Ky. 182. We therefore cannot agree with defendant's counsel upon this, his second ground.

Third. Instruction number one given by the court, in enumerating the duties of the defendant while operating his automobile on the highway, and for a failure of which he should be found guilty of negligence, contained this: "And that it was the duty of the defendant not to operate said automobile upon said highway at a greater rate of speed than twenty miles per hour at said time and place." This was followed by the statement that if the jury believed that the defendant failed to exercise any of the duties (including the one quoted), and by reason thereof the collision occurred, then the jury should find for the plaintiff. It is insisted that the speed rate of twenty miles per hour should not be mentioned in the instruction. Subsection 9 of section 2739 of the statute, *supra,* makes it *prima facie* evidence of negligence to run an automobile exceeding fifteen miles an hour upon any of the highways of the State, where same passes through the residence portion of any incorporated city, town or village, and the same consequence attaches if the speed of the automobile exceds twenty miles an hour outside of such incorporated town or village. Under the statute, if a collision should occur, the plaintiff would make out his case, after proving the fact of the collision, followed by the injury, by showing that the speed of defendant's machine was more than fifteen miles an hour, if the collision occurred in the residence portion of an incorporated town or village, or that it was more than twenty miles an hour if the collision occurred upon a public highway outside of such town or village. The statute must have this effect if any at all. It will not do to say that the provisions of the statute as to the effects and consequences of a violation of the speed limits therein mentioned is evidentiary only, so as to justify the submission of the case to the jury when those limits are exceeded, because it is the law every-

where, so far as we are aware, that such provisions may be strictly complied with and yet the party sought to be charged may be guilty of actionable negligence. In other words, in this particular case the speed may not have exceeded twenty miles per hour, still this would not be an absolute defense, as other facts and circumstances may have justified the submission of the case to the jury. On the contrary, defendant may have been traveling at a rate of speed greater than twenty miles an hour, and, under the facts and circumstances, not be guilty of negligence. When the plaintiff shows that the rate of speed at which the defendant was traveling was greater than that prescribed by the statute for that place, the burden then shifts to the defendant to show that the speed at which he was traveling did not produce the injury. This rule, as well as its converse, was recognized by this court in the case of Forgy v. Rutledge, *supra*. That case grew out of a collision by an automobile, and in dealing with this question we said: "But such *prima facie* or presumed negligence may, however, be rebutted or overthrown by other evidence. On the other hand, the fact that fifteen miles an hour (the accident there occurring in a city) was the maximum speed permitted by the act in question would not, if that rate of speed was not reached by appellants in operating their automobile, prevent a recovery by appellee, if they were otherwise so negligent in operating it as to have caused his injuries." In that case complaint was made of an instruction very similar to the one here, wherein the jury were told, among other things, that it was unlawful for defendant to operate his machine at a greater rate of speed than fifteen miles an hour. But this objection was not allowed to prevail, the court saying:

"The jury were not advised by the instruction that they should find for appellee if they believed from the evidence the automobile was being operated at a greater rate of speed than fifteen miles an hour, but that as a matter of law it should not have been run at a greater speed than fifteen miles an hour. The meaning of the instruction as a whole was that the speed of the automobile, whether greater or less than fifteen miles an hour, was to be considered by the jury in connection with the other evidence in the case, in determining whether it was operated by appellants with reasonable care, having regard for the traffic and use of the street and its

condition and the safety of persons who might be on it."

The instruction now being considered is really more favorable to the defendant than the law or the facts justified. In the way it is framed, it not only cast upon the plaintiff the burden to show that the speed exceeded twenty miles per hour, but also the burden on him to show that such excessive speed was the proximate cause of the collision, when as we have seen, he made a *prima facie* case when he proved the speed to exceed the statutory limit. Upon another trial the court should omit the clause quoted above from the body of the instruction, and the following should be inserted at the end: "And the jury are further instructed that it was the duty of the defendant not to operate said automobile upon said highway at a greater rate of speed than twenty miles per hour at said time and place, and if the jury should believe from the evidence that the plaintiff did operate his machine on such highway at said time and place at a speed greater than twenty miles per hour, and should further believe that his machine collided with that of plaintiff, then the law is for the plaintiff and the jury should so find, unless the jury should further believe from the evidence that such rate of speed was not the proximate cause of the plaintiff's injuries."

Instruction number four is one permitting punitive damages, which we do not think the evidence authorizes, as the negligence of the defendant, if any, is not of the gross or reckless character justifying the recovery of punitive damages. National Casket Co. v. Powar, 137 Ky. 156. In that case the facts necessary to be shown to entitle the plaintiff to recover punitive damages are well stated as follows: "It is not every case of gross negligence that warrants the infliction of punitive damages. McHenry Coal Co. v. Sneddon, 98 Ky. 688, 34 S. W. 228, 17 Ky. Law Rep. 1261. It is only where the negligence manifests a wanton disregard of the lives or safety of others, or is wilful or malicious, that such recovery is allowed. L. & N. R. R. Co. v. Kingman, 35 S. W. 264; 18 Ky. Law Rep. 83; Lexington Ry. Co. v. Fain, 80 S. W. 463, 25 Ky. Law Rep. 2245; Southern Ry. Co. v. Goddard, 121 Ky. 567, 89 S. W. 675, 28 Ky. Law Rep. 527." It was, therefore, error to give this instruction to the jury.

Complaint is made that the instruction on the measure of damages authorized a recovery for the destruction of plaintiff's power to earn money, if any, when there was no proof of his earning capacity. This criticism was made of the instruction in the case of Chesapeake & Ohio Ry. Co. v. Bland, 171 Ky. 430. But this court, in its opinion in that case, declined to consider it, saying: "It is also the law that where the injury is permanent, failure to show one's earning capacity, or the impairment thereof, is not fatal to a recovery. Cumberland Tel. & Tel. Co. v. Overfield, 127 Ky. 548; C. & O. Ry. Co. v. Banks' Admr., 153 Ky. 630." Under these authorities, the objection to the instruction on this ground is not well taken.

Instruction six submits to the jury the question as to whether the plaintiff had his automobile truck provided and equipped with brakes, steering gear, etc., and also as to the competency of the chauffeur, and the fact as to plaintiff riding upon the steps at the rear end of his machine, and whether these acts constituted contributory negligence, and authorized the jury to find for the defendant if they should conclude that the matters mentioned therein constitute such contributory negligence. For reasons hereinafter stated, we see no room for this instruction in this case.

In addition to what we have said, it is urgently insisted upon us that the fact of plaintiff riding upon the steps is not only contributory negligence, but such as to prevent recovery herein, and to have authorized a peremptory instruction for the defendant. The rule as to causal connection between the act complained of and the effect produced, to which we have hereinbefore adverted, has peculiar application here. It is perfectly manifest that the place where plaintiff was riding was altogether safe, and no injury would have happened to him if his car had not been overturned. His position is entirely unlike that of a passenger protruding his arm, or some parts of his body, out from the car, and thereby sustaining injuries. In such a case it is the universal rule that such acts on the part of the passenger constitute such contributory negligence as to prevent a recovery in a suit between him and the railroad company, there being no negligent act of the defendant shown; but it could hardly be contended that the passenger thus offending, if injured through a negligent collision, or be-

cause of a defective track whereby a wreck was precipitated, that he would be deprived from recovering from the defendant because of his negligence, as stated above. It will at once be seen that his negligence, of the character stated, was no part of the proximate cause of the injury which he might sustain in the collision or the derailment of the car. But the case of a passenger becoming injured while wrongfully exposing himself to danger has no analogy to the instant case. The one deals with contractual relations between passenger and carrier, while the other sounds altogether in tort. The analogy would be more marked if a third party, while the passenger was occupying a dangerous or careless position on the train, should negligently injure him. Surely it could not be contended that because the passenger was negligent as between himself and carrier such negligence would prevent him recovering damages for such injuries from the one commiting the tort. In the instant case the position of plaintiff on his automobile truck is an incident which afforded an opportunity for the negligence of the defendant to have the more easily produced the injury, but this is the only effect that can be given to it. It, in no view of the case, justified the collision, or furnished a defense to a suit to recover damages for the injuries. The court, therefore, did not err in refusing the peremptory instruction, and should not have given instruction number six. Instruction X and Y related to the same questions which we have discussed, and were properly refused.

Fourth. As to the alleged misconduct of counsel, we find nothing from the bill of exceptions, or in the record, pointing out to us what the alleged misconduct was. It is shown that during the trial, from some remarks made by plaintiff's counsel, laughter was produced in the audience, and perhaps some whispering between some parties located within a comparatively short distance from the jury, but it is not shown what was said between the parties, much less that anything was said concerning the case, or that the jury heard even what was said; on the contrary, it is shown by the ones who are supposed to have engaged in the conversation, that nothing was said having a tendency to prejudice the jury, even if the remarks had been heard by it, and we see no merit in this contention.

Fifth. During the noon adjournment of one day, while the trial was in progress, two of the jurors were seen to have been examining an automobile which, it develops, was that of defendant, it being on the streets of Bardstown, but the jurors did not know, at the time, that it belonged to the defendant. They were on their way to a restaurant to obtain lunch and happened to see the machine and paid a very casual notice to it. This occurred some considerable time after the alleged collision, and it is impossible for us to see wherein such conduct was even reprehensible, much less prejudicial. It is true that the jurors should receive no evidence except that produced in court during the trial, but it is not shown that the machine, in the condition it was when they gave it the slight notice which they did, was in any, way calculated to shed any light whatever upon the issues of the case, and it is shown by their affidavits that they not only did not know whose machine it was, but that their examination, cursory as it was, had no influence on them whatever. Under the circumstances, we are convinced that this ground of complaint is without merit and unfounded. If the evidence is substantially the same on another trial, the court will give to the jury instruction number one, as modified herein, and the others not herein condemned. Other questions raised and not herein discussed are not determined by this opinion, as they are not likely to occur on another trial.

For the errors indicated herein, the judgment is reversed with directions to grant a new trial, and for proceedings consistent with this opinion. .