## Hubert Allen Searcy v. Golden.

## T. C. Searcy v. Golden.

(Decided November 2, 1916.)

### Appeals from Carroll Circuit Court.

1. Appeal and Error—Jurisdiction—Dismissal.—Where the amount involved was $250.00, the circuit court was without jurisdiction to grant an appeal to the Court of Appeals, and the appeal will be dismissed.

2. Highways—Automobiles—Care Required in Use of Highway—Duty of Chauffeur.—Under section 10 of chapter 81 of the acts of 1910 regulating the use and speed of motor vehicles, whenever it appeared that a horse ridden by a man on a highway had become frightened by the approach of an automobile, it was the duty of the person driving the automobile to cause it to come to a full stop until the horse had passed.

3. Highways—Regulation of Speed of Automobile—Collision—Damages for Injury.—It is the duty of the driver of an automobile not to run it upon a highway at a greater rate of speed than that permitted by the statute; and if, while running his automobile at a speed greater than that allowed by the statute, his automobile should collide with the automobile of another person, he is liable for any damages so inflicted, unless it should further appear that the unlawful rate of speed was not the proximate cause of the collision.

4. Negligence—Punitive Damages.—It is not every case of gross negligence that warrants the infliction of punitive damages; but, where the negligence manifests a wanton disregard of the lives or safety of others, or is wilful or malicious, punitive damages may be recovered.

5. Appeal and Error—Failure to Index Record—Fees.—Where the clerk who made the record failed to make an index showing the name of each witness and the page on which his testimony begins, as is required by sub-section 6 of rule 5 of court, the record will be condemned and the clerk prohibited from collecting his fees therefor.

J. A. DONALDSON & SON for appellants.

F. C. GREENE and TURNER & TURNER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Reversing on the first appeal and dismissing the second appeal.

The appellee, F. M. Golden, owned and operated an automobile in connection with his livery stable, at Carrollton.

On July 4th, 1913, the appellant, Hubert Allen Searcy, a boy seventeen years of age, was traveling horseback on a public road leading from Ghent to Sanders. The mare he was riding was about three years old, and belonged to T. C. Searcy, a brother of Hubert Allen Searcy. The mare became frightened at an automobile passing in the same direction and driven by Loraine Breek. Golden's automobile, filled with passengers, was driven by Chester Wiley, a boy 19 years old, and was following Breek's automobile, closely. Both automobiles and Searcy were going to the Sanders Fair. And, according to Sebree, a passenger on the front seat of the Breek car, the automobiles were racing—the Golden car was trying to pass the Breek car. Dean, another passenger in the Breek car, testified that the Golden car had tried to pass the Breek car two or three times.

As Breek passed Searcy and saw his mare was frightened, he, or Strebling, a passenger, called to Searcy, "Look out, another car is coming," or, "Look out behind," referring to Golden's automobile. According to Sebree, the cars were then only half a city block (200 feet) apart; but according to Wiley they were 200 yards apart, although Wiley further testified that he heard the call to Searcy to look out for the car coming behind him.

Wiley admits that when he first saw the mare she was frightened, and standing on the side of the road immediately after the Breek car had passed, when Williams, a passenger sitting on the front seat with Wiley, told him "to lay over" to the side of the road so as to avoid striking the mare. The mare, however, became still more frightened at the approaching automobile, ran backwards, striking the machine and throwing Searcy to the ground. The mare's leg was broken and she had to be killed.

Williams, who was riding in the front seat with Wiley in Golden's automobile, and had, therefore, the best opportunity of seeing what occurred, described the accident as follows:

"When we got to the top of the hill, near Mr. Park-er's, the machine in front of us scared a horse and it ran into the fence. It was standing just across the road, up against a fence; and I motioned to the boy and told him to lay over, just before we got to him. The mare was running back with him and struck the machine; and, before we were aware of it, after warning him, the mare reared up on its hind legs, the machine struck her on the hind leg, and the boy went off. The machine stopped and I went back and picked the boy up and took him to Parker's and left the mare where she was. If the horse hadn't gotten scared and run back it would not have happened."

These two actions, the first by Hubert Allen Searcy for $1,000.00 damages for personal injuries, and the other by T. C. Searcy for $250.00, the value of the mare, are the results of the accident.

In each case the petition lays the action upon three acts of negligence: (1) that Wiley gave no warning of his approach; (2) that he was running his car at an un-reasonable speed; and, (3) that he recklessly ran into the mare.

The cases were tried together; and the jury, describ-ing the collision as an "unavoidable accident," found for the defendant in each case. From a judgment upon the verdict, each plaintiff prayed and was granted an appeal, by the circuit court.

As the appeal of T. C. Searcy involved only $250.00, and was granted by the circuit court which was without jurisdiction to do so, it will have to be dismissed upon the authority of Childers v. Ratliff, 164 Ky. 123. His remedy is by a motion for an appeal, to be made in this court. Omar-Bowling Green Stone Co. v. L. & N. R. R. Co., 169 Ky. 832.

The appeal of Hubert Allen Searcy is, however, prop-erly here, and will be now considered.

The accident having occurred on July 4th, 1913, it is controlled by the Act of 1910 relating to motor vehicles, which was then in force. See Acts 1910, page 242.

For a reversal it is insisted, (1) that the verdict is not sustained by the evidence, and (2) that the instruc-tions were erroneous.

There is the usual conflict in the evidence respecting the speed of Golden's automobile, and whether it gave an adequate warning of its approach.

There is a slight curve in the road near the place where the accident occurred, but it is not made clearly to appear whether defendant's automobile was passing or had passed this curve at the time of the accident; and, there is no evidence that Wiley stopped the defendant's automobile after he had discovered that the mare had become frightened. On the contrary Wiley admits that when he first saw the mare she was frightened, and he does not claim that he stopped his automobile before the accident. Furthermore, it appears from the testimony of other witnesses that the Golden car went beyond the place where the mare was hit, before it stopped, and that its fender was broken and its axle bent, by the impact.

Section 9 of the Act of 1910 prohibited any one from driving an automobile upon a public highway at a speed greater than is reasonable and proper, having regard to the traffic and use of the highway, or so as to endanger the life or limb or injure the property of any person. It fixed a maximum speed limit in the country of twenty miles an hour, for a distance of one-fourth of a mile; and, if the speed should exceed that rate it should be *prima facie* evidence that the automobile was running at a rate of speed greater than was reasonable and proper, having regard for the traffic and the use of the way, or so as to endanger the life and limb or injure the property of any person.

That section further provided a maximum speed of eight miles an hour where the automobile was going around a corner, curve, or crossing a highway, where the operator's view of the road traffic was obstructed, and that a speed exceeding eight miles under those conditions should be *prima facie* evidence that it was unreasonable, having due regard to the traffic and the use of the way, or so as to endanger the life or limb or injure the property of any person.

And, section 10 of the Act further provided as follows:

"Whenever it shall appear that any horse ridden or driven by any person upon any of said roads, streets or highways, is about to become frightened by the approach of any such motor vehicle, it shall be the duty of the person driving or conducting such motor vehicle to cause the same to come to a full stop until such horse or horses shall have passed."

Upon the question of the speed of defendant's automobile at the time of the accident, Wiley testified that he was going from ten to twelve miles an hour, while other witnesses testified that Wiley was going from twenty to thirty-five miles an hour; and, as heretofore stated, while Wiley said he was 200 yards behind Breek's automobile, Sebree testified that he was only half of a city block, or 200 feet, behind him.

But, there is no controversy about the fact that Wiley saw Searcy's horse was frightened, and that he did not stop the machine as required by section 10 of the statute, *supra*. As above stated, Wiley himself admitted that when he first saw the mare he saw she was frightened, and he does not claim that he stopped his machine or even decreased the speed at which he was then traveling. The statute then in force was, however, peremptory in its terms, and required Wiley to come to a full stop. See also, Indiana Springs Co. v. Brown, 165 Ind. 465, 1 L. R. A. (N. S.) 238; McIntyre v. Orner, 166 Ind. 57, 4 L. R. A. (N. S.) 1130.

Under this view of the case, the verdict is not sustained by the evidence; on the contrary, it is directly opposed to the evidence.

The first instruction is criticised because, instead of requiring the defendant to run at a reasonable and safe rate of speed, by not exceeding twenty miles an hour, for one-fourth of a mile, or eight miles an hour while driving around a curve, it left it to the jury to say whether the defendant was driving his automobile at a reasonable and safe rate of speed, without mentioning the provisions of the statute, or placing his negligence upon the speed provisions of the statute.

We think this criticism is well taken, since the instruction as given left it to the individual opinion of the jurors as to what was a reasonable and safe rate of speed, under the circumstances, without any reference to the statute governing that subject.

Furthermore, the first instruction left it to the jury to say whether it was necessary for Wiley to stop the automobile when he saw the horse was frightened, having due regard for the safety of the persons riding therein. Evidently, the court instructed under the Act of 1904 (Ky. Sts. 1909, sec. 2739g), which did not contain the twenty-mile and the eight-mile speed limits above pointed out. That statute was, however, repealed by the

Act of 1910, and the present Act of 1914 (Ky. Sts. 1915, sec. 2739), had, of course, not been enacted.

Under the uncontroverted testimony upon this subject, the statute of 1910 made it the duty of Wiley to stop his automobile when he saw the horse was frightened, and the court should have instructed under that statute.

Instruction No. 1½ was erroneous for the same reason, and needs no further comment.

This question, under the Act of 1914 regulating the speed of motor vehicles upon the public ways, was lately considered by this court in Moore v. Hart, 171 Ky. 725; and, while the statute of 1914 is slightly different from the statute of 1910 as to the speed limits, the method of instructing the jury upon that subject is the same, under both statutes.

In Moore v. Hart, *supra*, the trial court, in enumerating the duties of defendant while running his automobile on the highway, made it his duty not to run it at a greater speed than twenty miles an hour—the maximum speed permitted by the Act of 1914; and, the jury was further told that if defendant failed to perform that duty, and by reason thereof the collision occurred, they should find for the plaintiff.

In criticising the instruction the court said:

"It is insisted that the speed rate of twenty miles per hour should not be mentioned in the instruction. Subsection 9 of section 2739 of the statute, *supra*, makes it *prima facie* evidence of negligence to run an automobile exceeding fifteen miles an hour upon any of the highways of the State, where same passes through the residence portion of any incorporated city, town or village, and the same consequence attaches if the speed of the automobile exceeds twenty miles an hour outside of such incorporated town or village. Under the statute, if a collision should occur, the plaintiff would make out his case, after proving the fact of the collision, followed by the injury, by showing that the speed of defendant's machine was more than fifteen miles an hour, if the collision occurred in the residence portion of an incorporated town or village, or that it was more than twenty miles an hour if the collision occurred upon a public highway outside of such town or village. The statute must have this effect if any at all. It will not do to say that the provisions of the statute as to the effects and.

consequences of the speed limits therein mentioned are evidentiary only, so as to justify the submission of the case to the jury when those limits are exceeded, because it is the law everywhere, so far as we are aware, that such provisions may be strictly complied with and yet the party sought to be charged may be guilty of actionable negligence. In other words, in this particular case, the speed may not have exceeded twenty miles per hour, still this would not be an absolute defense, as other facts and circumstances may have justified the submission of the case to the jury. On the contrary, defendant may have been traveling at a rate of speed greater than twenty miles an hour, and, under the facts and circumstances, not be guilty of negligence. When the plaintiff shows that the rate of speed at which the defendant was traveling was greater than that prescribed by the statute for that place, the burden then shifts to the defendant to show that the speed at which he was traveling did not produce the injury.''

In applying these principles to the instruction under consideration in Moore v. Hart, the court there said:

''The instruction now being considered is really more favorable to the defendant than the law or the facts justified. In the way it is framed, it not only cast upon the plaintiff the burden to show that the speed exceeded twenty miles per hour, but also the burden on him to show that such excessive speed was the proximate cause of the collision, when, as we have seen, he made a *prima facie* case when he proved the speed to exceed the statutory limit. Upon another trial the court shall omit the clause quoted above from the body of the instruction, and the following should be inserted at the end: 'And the jury are further instructed that it was the duty of the defendant not to operate said automobile upon said highway at a greater rate of speed than twenty miles per hour at said time and place, and if the jury should believe from the evidence that the plaintiff did operate his machine on such highway at said time and place at a speed greater than twenty miles per hour, and should further believe that his machine collided with that of plaintiff, then the law is for the plaintiff and the jury should so find, unless the jury should further believe from the evidence that such rate of speed was not the proximate cause of the plaintiff's injuries.' ''

See also Forgy v. Rutledge, 167 Ky. 186.

Upon another trial, these principles should be applied, making such verbal changes as may be necessary under the Act of 1910.

The plaintiff further asked an instruction authorizing the jury to award punitive damages, but the court refused to instruct the jury upon that subject. Under the facts of this case, we think this was error.

The rule is, that punitive damages can be allowed for negligence, only where the evidence shows recklessness or indifference to the safety of others, or where the injury is malicious or wanton or the negligence is gross. Straight Creek Coal Co. v. Huddleston's Admr., 147 Ky. 94; South Cov. & C. St. Ry. Co. v. Barr, 147 Ky. 549; Woody v. Louisville Ry. Co., 153 Ky. 14.

And it has been further said that to warrant punitive damages, the injury need not result from an intentional wrong; a showing of reckless conduct, or such gross negligence as to indicate a wanton disregard of others, being sufficient. C. & O. Ry. Co. v. John's Admr., 155 Ky. 264.

In National Casket Co. v. Power, 137 Ky. 164, we considered the rule in connection with automobile cases, saying:

"It is not every case of gross negligence that warrants the infliction of punitive damages. McHenry Coal Co. v. Snedden, 98 Ky. 688, 34 S. W. 228, 17 Ky. Law Rep. 1261. It is only where the negligence manifests a wanton disregard of the lives or safety of others or is wilful or malicious that such recovery is allowed. L. & N. R. R. Co. v. Kingman, 35 S. W. 264; 18 Ky. Law. Rep. 83; Lexington Ry. Co. v. Fain, 80 S. W. 463, 25 Ky. Law Rep. 2245; Southern Ry. Co. v. Goddard, 121 Ky. 567, 89 S. W. 675, 28 Ky. Law Rep. 527.

"The most that can be said of the conduct of Moore from the worst aspect presented by the plaintiffs' evidence is that he failed to comply with the statutory regulations as to six-mile limit of speed at that point, and failed to sound his signal horn. Most horses are now accustomed to the sight and sounds of automobiles, and pay but little attention to them. The nag did not show symptoms of fright until the machine was so near that it was probably impracticable to stop it so as to relieve its apprehension of danger. It is not shown that appellant Moore knew that the horse was frightened, or that he purposely refrained from looking. He simply failed to

see what he might have seen by close attention, and the exercise of greater caution. Unless he was aware of the animal's fright, and of the danger to the plaintiffs, or unless the conditions were such as necessarily put him on notice that such conditions would most likely result from a continuation of his course, it can scarcely be said that he wantonly or wilfully inflicted the injury on the ladies.''

But here, Wiley was fully aware of the animal's fright; and ignored it, in direct violation of the statute. See also Webb v. Moore, 136 Ky. 708, and Cumberland Tel. & Tel. Co. v. Yeiser, 141 Ky. 19, 31 L. R. A. (N. S.) 1137, decided under the Act of 1904.

And, since the petition charged gross negligence against the defendant, it was sufficient to warrant such an instruction, provided the facts justified it.

In view of the fact that Wiley failed to stop his automobile after he knew the mare was frightened while standing in a narrow roadway enclosed by fences, the jury would have been justified in finding that his action was wanton, reckless, and in disregard of the rights of others.

For a failure to make an index of the testimony of the witnesses as is required by subsection 6 of Rule V. of court, the record is condemned and the clerk of the circuit court is prohibited from collecting any of his fees therefor. Rule V., subsec. 8.

The appeal of T. C. Searcy is dismissed without prejudice; the judgment in the case of Hubert Allen Searcy against Golden is reversed and remanded for further proceedings consistent with this opinion.