## Tipton v. Estill Ice Co.

Oct. 3, 1939.

Charles L. Seale, Judge.

Clarence Miller and Ben H. Scott for appellant.

Shumate & Shumate for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

In July, 1937, a Ford coupe owned and driven by Everett Arthur and a truck of the Estill Ice Company, a corporation, being driven by Lawrence Edmondson, came in collision on highway 52 between Beattyville and Irvine, as a result of which W. A. Tipton, a passenger in the Ford coupe, sustained personal injuries.

W. A. Tipton instituted this action against the ice company, seeking to recover damages for his alleged personal injuries, for loss of time and medical expenses incurred, alleging that the collision and injuries sustained by him as a result thereof were due to the negligent operation of the company's employee in the operation of the truck.

The answer of the defendant consisted of a traverse and an affirmative plea of contributory negligence on the part of plaintiff which affirmative plea was controverted by reply. Trial resulted in a verdict for the defendant signed by 9 of the jurors and plaintiff is appealing from a judgment predicated on that verdict.

As grounds for reversal it is argued (1) that the court erred in admitting incompetent evidence and (2) in giving instruction No. 1 based on such evidence.

As appears from the evidence appellant had procured Everett Arthur to take him and his 11 year old son to Irvine to have the latter treated by a physician. As the car in which they were riding was descending a mountain on a considerable curve it came in collision with appellee's truck and appellant sustained severe and painful injuries. Appellant testified that in rounding the curve they could only see a short distance ahead; that when they came in view of the truck which was

traveling in the opposite direction, both cars were being driven to the right of the center of the road but that immediately before meeting, the truck swerved over diagonally across the road directly in the path of Arthur's car, which struck it near the right front fender and wheel. He was corroborated in every detail as to how the accident occurred by his son, Robert Tipton, Everett Arthur, the driver of the Ford coupe, and Ray Tipton, who was in the truck with Lawrence Edmondson but who stated that he was not related to appellant. The evidence for appellant is to the effect that the Ford coupe was running from 15 to 20 miles per hour and the truck considerably faster. Everett Arthur testified that the brakes on his car were in very good condition; that the truck swerved in his path so suddenly and when so near him that he could not by the application of his brakes or otherwise avoid striking it.

Edmondson testified that he was driving the truck to the right of the center of the road; that the Ford coupe came around the curve away over to the right hand side as the truck was traveling, struck the front fender and wheel of the truck, causing it to swerve diagonally to the opposite side of the road; that the coupe swerved around and somewhat to the rear of it. His evidence is to the effect that the coupe was traveling 25 to 30 miles per hour and the truck was going 15 or 20. He stated that he asked Arthur why he did not pull over and the latter replied that a radius rod hung and he had no brakes. Arthur denied that he made any such statement. He further testified that Arthur ran away from the scene but the latter testified that appellant was bleeding profusely; that he hurried away to get some one to take him to a physician. Harris Park, who is in some way connected with appellee, testified that he received information concerning the wreck and went to the scene about 30 minutes after it occurred. He made observations and measurements on the ground and his evidence as to the tracks and skid marks of the automobiles strongly tends to corroborate the driver of the truck. Pryse Arthur, a brother of Everett Arthur, testified that he viewed the scene of the accident later in the afternoon and his evidence as to physical marks, etc., tends to indicate that the collision occurred to the right of the center of the road as the coupe was traveling.

Appellee attempted to show that Everett Arthur was drinking or intoxicated at the time of the accident.

They asked him and other witnesses for appellant who saw or were with him whether he had been drinking. It appears that at the time of the accident Everett Arthur had no driver's license and about 12 o'clock went to the home of James Winn, the circuit clerk, and requested that the latter go to his office and issue him a driver's license. Appellee introduced and asked the clerk whether Arthur was drinking or smelled of whiskey when he came to his home and he answered in the negative but said that when he went to the office to issue the license and Everett Arthur was standing beside him he smelled liquor; that he appeared to be excited because of fear that he would be arrested for not having a driver's license. J. W. Baber, a witness introduced by appellee, was permitted to testify over appellant's objection that he saw Everett Arthur about dusk on the day of the accident and the latter seemed to be drinking "pretty heavy" and was "pretty full." Everett Arthur admitted that he was drinking about dark on the day of the accident and when seen by J. W. Baber but testified that he had not taken any drink or drinks on that day prior to the accident or to the time he procured his driver's license. Appellant testified that when he went to see Everett Arthur the latter and Rouster Crowe were in a field plowing; that he and Everett Arthur went to the home of the latter's father nearby, got in the automobile and started on the journey to Irvine; that Everett Arthur took no drink while he was with him and did not appear to be drinking or intoxicated; that he smelled no liquor on his breath. Rouster Crowe testified that he and Arthur started plowing early that morning; that the latter was not drinking.

From the foregoing it will be seen that no witness testified that Everett Arthur took a drink of liquor on the morning of the accident and before it occurred and there is an entire absence of evidence to the effect, or that would indicate he was to any extent intoxicated; or under the influence of liquor at the time or prior to the accident. On the other hand the evidence of witnesses who were with him and in position to know testified that they did not see him take a drink or see anything to indicate that he was drinking. In the circumstances revealed by the record the evidence of Baber that Everett Arthur was under the influence of liquor late in the afternoon or in the evening was wholly incompetent and prejudicial.

The instruction complained of reads:

"If the jury believe from the evidence that Everett Arthur, the driver of the car in which plaintiff was a passenger, had been drinking and by reason of said drinking he was sufficiently under the influence of intoxicating liquor that he was not able to operate his car in a reasonably safe manner, and that the plaintiff knew of his condition at the time, or could have known by the exercise of ordinary care, of his intoxicated condition, and that by reason of said condition the collision occurred, the jury will find for the defendant."

The only pleading, if any, on which such instruction could be based was appellee's plea of contributory negligence upon the part of appellant. An issue made by pleading is not sufficient to warrant an instruction unless it is supported by evidence and the court should confine the instructions to issues made by pleadings which are supported by competent evidence. Rockcastle Gas Co. v. Horn, 241 Ky. 398, 44 S. W. (2d) 273; Equitable Life Assurance Society of United States v. Merlock, 253 Ky. 189, 69 S. W. (2d) 12; Leming's Adm'r v. Leachman, 268 Ky. 781, 105 S. W. (2d) 1043. The evidence of the circuit clerk that he got the odor of liquor when he issued the driver's license to Everett Arthur is not sufficient to warrant the instruction complained of and there was no other competent evidence on which to base such an instruction.

Appellee offered the following instruction which was refused by the court:

"The court further instructs the jury that the failure of Everett Arthur, driver of the automobile in which plaintiff was riding at the time and place of the accident, to procure driver or operator's license before said accident, shall be deemed prima facie evidence of said Everett Arthur in causing or contributing to the accident mentioned in the evidence."

It is contended by counsel for appellee that this instruction should have been given and such contention is based on Section 2739m-62, Kentucky Statutes, which reads:

"In addition to the penalties herein provided, if any driver involved in any accident resulting in any

damage whatever either to person or to property shall be ineligible to procure operator's license herein provided for or being eligible therefor shall have failed to procure said operator's license, or having procured same yet at the same time of such accident same shall have been suspended or revoked, he shall be deemed prima facie negligent in causing or contributing to cause such accident.''

Since there is no showing that Everett Arthur was ineligible to procure an operator's license or that having secured a license same had been suspended or revoked, we are not required to determine whether, if such had been shown, the court would have been authorized to give an instruction under the quoted section of the statute. However, we do unhesitatingly hold that it was not competent for the Legislature to make the mere failure to secure operator's license prima facie evidence that the driver involved in an accident was negligent in causing or contributing to such accident.

In the recent case of Commonwealth et al. v. Kroger, 276 Ky. 20, 122 S. W. (2d) 1006, 1007, it is said:

''It is now well settled that it is competent for legislative bodies to prescribe by their enactments that a certain state of facts shall constitute a presumption of the principal fact, and to thereby cast the burden of overcoming that presumption on the adverse party, even a defendant in a criminal prosecution. [Citing authorities.] But it is equally well settled that such enacted presumptions may be given only a prima facie effect and not a conclusive one so as to bar the opposing litigant, or the defendant in a criminal or penal action, from the right to rebut it. It is, therefore, incompetent for legislative bodies to prescribe for a conclusive presumption.

''Moreover, the right to prescribe for a rebuttable one is qualified to this extent—that the prescribed facts for creating the prima facie presumption shall have 'a natural and rational evidentiary relation' to, and a logical tendency to prove, the principal fact.''

It is quite obvious that in the circumstances shown, the mere failure of Everett Arthur to procure an operator's license prior to the accident had no ''natural

and rational evidentiary relation to—or a logical tendency to prove the principal fact.'' The opinion quoted from and authorities therein cited clearly demonstrate the fallacy of argument that the instructions under consideration in the circumstances shown should have been given.

For the reasons indicated the judgment is reversed and the cause remanded for a new trial and proceedings consistent with this opinion.