**BABER v. MERMAN.**

Court of Appeals of Kentucky.
March 14, 1952.

Rehearing Denied June 20, 1952.

Ebert, Cook & Burke, Newport, for appellant.

Wm. J. Wise, Newport, for appellee.

STANLEY, Commissioner.

The appellee, Daniel W. Merman, suffered personal injuries in a collision between his motorcycle and an automobile of the appellant and recovered · judgment for $3,000. His father, Joseph E. Merman, recovered judgment for $385 for expenses incurred in the treatment of his injured son.

Daniel, about sixteen years old, was riding his motorcycle westwardly, about 6:30 P. M., January 1, 1949, between Bellevue and Newport on a street or road called Riverside Drive. The street was 29 feet wide from curb to curb. His testimony was that he was riding closer to the right curb than the center of the road. He passed through the flood wall gates and intended to turn and cross to the left side to a gasoline filling station. He looked back but saw no car coming. He had gone about 100 feet beyond the gates and noticed the station was closed, so he kept going on at about 25 mph, the "top speed" of his machine. The road was rough along the flood wall and there were some rocks or gravel along the way, which apparently had dropped from trucks engaged in the construction work. Said he: "I kind of stuck on the rocks alongside the road" and "I

swerved out about one or two feet out of the road. Then I got hit. I don't remember after that." He further testified, "There would be enough room for a car to fit in between. If he (the automobile driver) was trying to fit in between, he could fit in between. * * I say, it was about five feet, there was in between" his motorcycle and the center of the road. He knew the signals which a motorist should give and admitted he gave no kind of signal of an intention to make a left-hand turn or to swerve toward the center of the traffic lane he was in. He stated, and proved by his brother, that he had a burning headlight on the handlebar, and that there was a red reflector mirror on the back of the machine, but it was very loose.

The boy's father got to the scene before the ambulance had started to the hospital. He saw some glass "apparently from the reflector and the light on the motorcycle." The next morning about eleven o'clock, some sixteen hours after the accident, the father measured tire skid marks on the road, which ran for 85 feet straight ahead to the broken glass. A young friend of Daniel was going in the opposite direction on his bicycle. He heard the crash and went back. He stated the back wheel and frame of Dan's motorbike were under the automobile and the front wheel was "up on the flood wall." The automobile was on its right side, about two feet from the center of the road.

We state the evidence for the defense for it too must be considered on the question of whether a peremptory instruction for the defendant should have been given.

Daniel passed Stanley Smith's automobile, going in the same direction, on the right so close that Smith had to swerve suddenly to the left, as he believed, in order to avoid a collision. The boy was looking back over his shoulder, gave no signal, and had no light on the motorcycle. Then he slowed down and Smith passed him. In a moment, he heard the "squeal" of the taxicab and immediately stopped and went back. The automobile was about the middle of the right traffic lane. Mrs. Smith's testimony is about the same with the addition that she noticed tire skid marks of the taxicab for about one and a half or two lengths of the

144

machine, which she indicated by pointing to an object in the court room to be about fifteen feet.

The driver of the taxicab, Omar Foree, testified that he was driving along 20 or 25 mph; had gone through the flood wall gate, and did not see the motorcycle until he was right on it, at the instant of the collision, although he was looking straight ahead. There was no sort of light or reflector on it, and the boy gave no signal of an intention to turn to the left. As the machines collided, he swerved to his left, applied his brakes and stopped within ten feet. The motorcycle was close to the middle of the traffic lane, but closer to the curb than the center of the road.

There is no contradiction in the evidence that the front of the motorcycle was badly broken, or, as one witness described it, demolished; that there was no indication of a striking by the front of the automobile, but there were dents in the right fender immediately over the wheel and just back of it near the hinge of the front door made by the motorcycle. This demonstrates that the motorcycle was in the act of being passed by the automobile when they collided.

The plaintiff specifically pleaded negligence of the defendant in two particulars. One was excessive speed of the automobile and the other failure to give a warning of its approach. The matter of speed (accepting the doubtful competency and efficacy of the father's evidence as to the extended skid marks) had nothing to do with causing the accident. It may be eliminated from consideration. See Knecht v. Buckshorn, 233 Ky. 329, 25 S.W.2d 727. If it be conceded that the driver of the defendant's car should have seen the motorcycle in the observance of proper lookout and should have sounded his horn or given other signal as he was about to pass it, there is still the admitted fact that the boy had given no signal of an intention to turn to his left from his safe path of travel, where he was not in peril. He swerved suddenly into the side of the automobile while it was in the act of passing. Here is straightout contributory negligence preventing his recovery of damages for the injuries he suffered in the unfortunate accident. The court should, therefore, have directed a verdict for the defendant. Knecht v. Buckshorn, 233 Ky. 329, 25 S.W.2d 727; Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728; Hatfield v. Sargent's Adm'x, 306 Ky. 782, 209 S.W.2d 306.

Should there be another trial of the case, the court will take note that the instructions given on this trial are erroneous in several particulars, as pointed out by the appellant. We may also express the opinion that the evidence that the plaintiff, Daniel Merman, had no driver's license was irrelevant, as well as was the contradictory testimony as to whether or not a policeman had given him permission to operate his motorcycle without a license. Moore v. Hart, 171 Ky. 725, 188 S.W. 861; Gunterman v. Cleaver, 204 Ky. 62, 263 S.W. 683.

The judgment is reversed.