RENDERED:  JUNE 4, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1684-MR

MICHEAL PIERSON                                             APPELLANT


|   |   |
|---|---|
| v. | APPEAL FROM BOONE CIRCUIT COURT<br>HONORABLE JAMES R. SCHRAND, II, JUDGE<br>ACTION NO. 16-CI-01442 |


STEPHANIE HARTLINE AND
LIBERTY MUTUAL FIRE
INSURANCE COMPANY                                    APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND L. THOMPSON, JUDGES.

JONES, JUDGE:  Appellant Micheal Pierson ("Pierson") brings this appeal following the jury verdict rendered in Boone Circuit Court in favor of Appellee Stephanie Hartline ("Hartline") and that court's subsequent dismissal of Pierson's bad faith claim against Hartline's insurer, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), for violations of the Kentucky Unfair Claims Settlement

Practices Act ("KUCSPA"). The trial court ruled that evidence of Pierson's suspended license was admissible at trial under KRS[1] 186.640. In *voir dire*, approximately twenty potential jurors indicated that Pierson's suspended license would affect their ability to render a fair and impartial decision. Although Pierson's counsel moved to strike sixteen of those jurors, the trial court excused only eight for cause. Pierson then used his peremptory strikes to remove three more of those jurors from the panel.

Evidence of Pierson's suspended license was referenced throughout the trial. At the end of trial, the jury returned with a unanimous verdict for Hartline, and the trial court subsequently dismissed Pierson's claim against Liberty Mutual under CR[2] 12.02. For the reasons set forth below, we reverse and remand for a new trial and reinstate Pierson's bad faith claim pending the outcome of the new trial.

## I. BACKGROUND AND PROCEDURAL HISTORY

On December 28, 2014, Pierson and two friends, Torin DeJoy and Rob Fogelsong, went for a motorcycle ride westbound on KY 20/Petersburg Road, a two-lane road in Petersburg, Boone County, Kentucky. At the same time, Hartline and her family departed their home at around 4:30 p.m. on a trip to the

---

[1] Kentucky Revised Statutes.

[2] Kentucky Rules of Civil Procedure.

grocery store. Hartline and her two children rode in her 2015 Chevrolet Suburban eastbound on Petersburg Road, while her husband followed behind in his own vehicle.

Pierson and Hartline entered into a curve in the road at the same time, travelling in opposite directions, and collided. Upon impact, Pierson was thrown from his motorcycle into a roadside ditch. Pierson sustained devastating injuries, including multiple open fractures on his left arm and torn ligaments and menisci in his right knee. As a result, Pierson underwent surgery and to date has accumulated $72,542.90 in medical bills; he will require additional, future surgery.

The parties dispute which vehicle crossed the centerline, causing the collision. DeJoy, who rode his motorcycle behind Pierson, testified that he saw Hartline's Suburban cross the centerline into Pierson's lane of travel, causing the collision. Hartline's husband, Jeff, who drove his own vehicle behind his wife's, testified that Hartline was "entirely in her lane" at impact and said it "looked like the motorcycle failed to turn and just went straight" instead of curving to the right with the roadway. Both parties presented testimony from accident reconstruction experts interpreting the physical evidence at the scene of the accident, most notably an extended gouge mark beginning in Hartline's lane that Hartline argued was created by her vehicle's steering component that was damaged in the accident.

On October 26, 2016, Pierson filed a negligence claim against Hartline in Boone Circuit Court.  On August 29, 2019, he amended that complaint to assert a bad faith claim against Hartline's insurer, Liberty Mutual, for alleged violations of the KUCSPA.  The trial court bifurcated the claims against Liberty Mutual, and the claims against Hartline proceeded to trial.

Before trial, Pierson filed a motion *in limine* asking the trial court to preclude Hartline from presenting evidence regarding Pierson's suspended license.  Pierson had testified during his pretrial deposition that his Florida motorcycle operator's license was suspended at the time of the crash for failure to pay fines.

Q:  You had told – you testified earlier, early on in your deposition that at the time of this crash your motorcycle license had been suspended due to failure to pay a ticket; is that accurate?

A:  Correct.

Q:  What was that fine or that ticket for?

A:  For the light coming over – it was a nonmoving violation.

Q:  Okay.  The ticket you received had nothing to do with the operation of a motorcycle?

A:  No.

Q:  It was an equipment issue?

A:  Right.  It was a light, yeah.

Q: Okay. And because the light or I guess the ticket hadn't been paid, your license got suspended?

A: Correct.

Q: Any other reasons that you had a suspended motorcycle license other than an equipment issue?

A: It was a failure to pay tickets, and they were all nonmoving violations except for the failure to maintain lane . . . [referring to his testimony just two pages earlier, "When I was like 19 or 20, I got a failure to maintain lane. It was – it looked like a turn lane, but it wasn't a turn lane. I got a ticket for that."].

Pierson Deposition at 81-83.

Pierson argued that evidence of his suspended license was irrelevant pursuant to KRE[3] 401 and unduly prejudicial pursuant to KRE 403. Citing *Rentschler v. Lewis*, 33 S.W.3d 518, 520 (Ky. 2000), Pierson pointed out the Kentucky Supreme Court previously held that even under KRS 186.640, such evidence is generally inadmissible because it has no bearing on whether the person was negligently operating his or her vehicle in such a way as to cause the accident at issue.

On August 14, 2019, the trial court denied Pierson's motion, explaining:

As noted in *Tipton v. Estill Ice Co.*, 132 S.W.2d 347 (1939), KRS 186.640 purports only to create a rebuttable

[3] Kentucky Rules of Evidence.

-5-

presumption, which serves only to require the party against whom it operates to introduce evidence to rebut it. If this burden of going forward is not satisfied, the party in whose favor the presumption operates is entitled to a directed verdict. If the burden is satisfied, the presumption disappears and plays no further role in the case. *Rentschler*[, 33 S.W.3d at] 520-21. The Court finds that KRS 186.640 creates a rebuttable presumption of negligence for a driver with a suspended license and, therefore, testimony as to the suspension of Plaintiff's license shall be allowed.

Record ("R.") at 511.

Pierson then filed a motion seeking clarification of the trial court's order regarding the timing of when such evidence could be produced. Specifically, Pierson argued that the evidence of the suspended license should not be allowed until Pierson had the opportunity to rebut the presumption, therefore precluding any admission or mention of the issue during *voir dire*, opening statements, or Pierson's case-in-chief.

On the morning of August 19, 2019, the first day of trial, the trial court took up Pierson's motion for clarification. Pierson argued that allowing such evidence would violate KRE 609 as Kentucky only allows evidence of a crime if it was "punishable by death or imprisonment for one (1) year or more under the law under which the witness was convicted." Pierson also challenged the constitutionality of KRS 186.640 as arbitrary and capricious in violation of Sections 1, 2, and 3 of the Kentucky Constitution, violating the separation of

-6-

powers doctrine in Sections 27 and 28 of the Kentucky Constitution, and infringing on the exclusive rulemaking authority of the Court for practice and procedures in Sections 109 and 116 of the Kentucky Constitution.

Ultimately, the trial court rejected Pierson's arguments, ruling that "the statute says what it says." Video Record ("VR") 8/19/19 at 9:08:30-9:09:00. As the trial court interpreted the statute, KRS 186.640 allows reference to the suspended license at any point during the trial.

In light of the trial court's ruling, Pierson's counsel preemptively brought up the fact that Pierson was operating his motorcycle with a suspended license during *voir dire*. When asked whether Pierson would be "starting out on a level playing field" in light of the fact that he was "operating on a suspended license" on the day of the crash, a majority of the potential jurors indicated that there would be a "strike against [Pierson] starting out." VR 8/19/19 at 9:37:00-9:42:30. Ultimately, twenty jurors were called to the bench for further questioning about their admitted predisposition against Pierson. Pierson's counsel moved to strike sixteen of those jurors; of those sixteen, the trial court excused only eight for cause. The remaining eight jurors all expressed a bias against Pierson to some degree based on his suspended license.[4] However, upon questioning at bench, each

---

[4] Regarding their perceived biases, the remaining eight jurors expressed:

of these jurors (122, 219, 383, 238, 55, 214, 399, and 226) confirmed upon further questioning that they could be fair and impartial and render a verdict based on all of the evidence presented.

Pierson used his three peremptory strikes to remove Jurors 219, 55, and 226, and indicated on his strike sheet that he would have removed three other jurors who ultimately served on the panel. This left five jurors sitting on Pierson's jury – Jurors 383, 238, 214, 122, and 399 – who had expressed doubts regarding the license suspension.

---

Juror 122: stated his belief that "if you're not allowed to do it, don't do it"; the suspension is "not a major strike, but it's a strike";

Juror 219: stated that she would worry about his suspended license; Pierson is at least "50%" at fault; "it's always in the back of her mind";

Juror 383: the license suspension would weigh about "25%" against Pierson;

Juror 238: driving on a suspended license is "breaking the law"; "you're on the road and you're not supposed to be"; "it's a factor"; "3" out of ten against Pierson;

Juror 55: the suspension makes it "difficult"; "he was out on the road illegally"; "it may be a difficulty" at the end;

Juror 214: would have a "15%" "negative" predisposition against Pierson;

Juror 399: the license suspension "bothers her" because Pierson broke the law; she's a "rule follower"; she's in a "gray area";

Juror 226: she's "already judging him"; the license suspension would "impact" how she would view the case.

VR 8/19/19 at 9:46:46, 9:54:00, 10:05:00, 10:19:14, 10:22:10, 10:30:50, 10:33:33, 10:40:49.

Both parties made reference to Pierson's suspended licensed throughout the trial. During opening statements, Hartline's counsel reminded jurors that Pierson "had no driver's license, as we all know . . . . It had been suspended for at least six years prior to this accident." VR 8/19/19 at 1:56:19-1:56:26. On cross-examination, Hartline's counsel asked DeJoy whether he knew if Pierson had a motorcycle license on the day of the accident. Hartline's counsel also questioned Pierson regarding his license suspension, eliciting testimony that Pierson knew his license was suspended and had still been operating his motorcycle during that suspension on a regular basis. Finally, Hartline's counsel returned to the subject at the beginning of closing, stating that "Pierson hadn't had a driver's license in years," and that he was "unable to operate a motorcycle." VR 8/22/19 at 9:17:13-9:17:48. Hartline's counsel further opined that "[i]f [Pierson] just would have been obeying the law that states that he cannot operate a motorcycle or motor vehicle without a license, this accident doesn't take place." *Id.*

The jury returned a unanimous verdict in favor of Hartline. Hartline's duty of care was addressed in Question No.1 of the jury instructions:

> Do you find from the evidence that Stephanie Hartline violated any of her duties enumerated in Instruction No. 3 AND such failure was a substantial factor in causing the motor vehicle accident on December 28, 2014?

R. at 575.

Below that, the instructions stated: "If you have answered 'no' to Question No. 1, your verdict is complete." Having answered "no," the jury did not reach the issue of whether Pierson had breached his duty of care and instead returned to the courtroom. On September 16, 2019, the trial court entered a judgment consistent with that verdict.

Approximately one week later, Pierson moved for judgment notwithstanding the verdict, or in the alternative, a new trial. On October 17, 2019, the trial court denied that motion:

> [Pierson] first argues that this Court should have granted his motion to prohibit references to the suspension of the Plaintiff's driver's license. He argues that this evidence was irrelevant and inadmissible, and, by ruling against [Pierson], the Court permitted evidence that had no bearing on whether [Pierson] operated his vehicle in a negligent way to be introduced. As argued by [Hartline], [Pierson] elicited testimony that he was a capable and competent motorcycle operator. Additionally, [Pierson's] expert Neil Gilreath, an accident reconstructionist, opined that [Pierson] was a seasoned rider as he has been riding since he was in grade school, and that he was positioned properly in [the] left one-third of his lane when the accident occurred.
>
> . . . .
>
> The Court still finds that KRS 186.640 creates a rebuttable presumption of negligence for a driver with a suspended license and, based on the evidence presented by [Pierson] as noted above, testimony as to the suspension of [Pierson's] license was properly allowed.

-10-

[Pierson] next argues that this Court should have held that KRS 186.640 is unconstitutional in three ways. First, that it is it is [sic] arbitrary and capricious in violation of Sections 1,2, [sic] and 3 of the Constitution. Second, that it violates the separation of powers doctrine in Sections 27 and 28 of the Kentucky Constitution. Finally, that it infringes on the exclusive rulemaking authority of the Court for practice and procedures in Section 109 and 116 of the Kentucky Constitution. The Court does not find it appropriate to declare KRS 186.640, as based on the above analysis, the Court finds testimony about the license suspension was relevant and probative and not unduly prejudicial [sic].

[Pierson] further argues that this Court should have prohibited evidence of the suspended license under KRE 609 as a suspended license is not a felony. The Court finds that this argument is not well-taken, in that the evidence of the suspended license was not used to show that [Pierson] had a criminal background, but rather to dispute [Pierson's] evidence that he was a capable driver and competent motorcycle operator.

Lastly, [Pierson] argues that the Court by failing to grant the entirety of [Pierson's] Motions to Strike for Cause, a jury was impaneled that was prejudicial to [Pierson]. In support, he argues that during *voir dire* several jurors indicated that they would not be entering the trial giving both sides a level playing field, even indicating percentages to which [Pierson] would be starting at a deficit. [Pierson] contends that, although each juror said they could be fair and impartial, they should still have been stricken from the panel because their previous answers were not rehabilitated. [Pierson] argues that as the Court only excused eight jurors for cause, denying seven to nine of [Pierson's] challenges for cause, [Pierson] was forced to use three peremptory strikes to remove jurors who should have been excused for cause, resulting in three jurors who should have been stricken for cause making it onto the jury. "To determine whether

-11-

a reasonable ground existed to doubt a challenged juror's ability to render a fair and impartial verdict, the trial court must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor." *Sturgeon v. Commonwealth*, 512 S.W.3d 189, 195. "In the final analysis, whether to excuse a juror rests upon the sound discretion of the trial court." *Id.* at 192. This Court finds that the jurors empaneled had the ability to render a fair and impartial verdict based on their responses during *voir dire*.

This Court finds [Pierson's] arguments and current statutory and case law do not provide grounds to vacate its previous decisions or the verdict rendered by the Jury.

R. at 658-60.

Shortly thereafter, Liberty Mutual moved pursuant to CR 12.02 to dismiss Pierson's bad faith claim against it as the underlying case had been resolved in favor of Hartline. The trial court granted the motion:

Liberty Mutual argues that [Pierson's] claims are not sustainable in light of the jury's verdict in favor of Ms. Hartline. They contend that [Pierson] cannot establish the type of wrongful conduct necessary to satisfy the threshold for bad faith liability because the jury refuted Hartline's liability, Liberty Mutual does not have an obligation to pay [Pierson's] claim under the terms of the applicable insurance policy [sic].

[Pierson] objects to the request for dismissal, arguing that it is premature to render a decision as, at the time of the filing of his response, there were pending post-trial motions that had not been ruled on by the Court. As the motions referenced have now been denied by this Court, the Court finds this argument moot. [Pierson] further argues that his pending appellate remedies also make it premature for the Court to rule on the underlying motion.

-12-

> The Court disagrees.  [Pierson] has set forth no further grounds for denial of [Liberty Mutual's] motion to dismiss.

R. at 677-78.

Pierson timely appealed.

## II.    STANDARDS OF REVIEW

"When construing a statute, this Court is presented with an issue of law which we address *de novo*."  *Jefferson County Bd. Of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012) (citing *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007)).  "In reviewing the trial court's ruling on evidentiary issues, the appellate court applies an abuse of discretion standard." *Summe v. Gronotte*, 357 S.W.3d 211, 213 (Ky. App. 2011) (citing *Barnett v. Commonwealth*, 317 S.W.3d 49, 61 (Ky. 2010)).

> "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).  The test is not whether an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982).  Reversal is only warranted if the error, unless corrected, would prejudice the substantial rights of a party. *Davis v. Fischer Single Family Homes, Ltd.*, 231 S.W.3d 767, 776 (Ky. App. 2007).  A substantial possibility that the jury verdict would have been different had the excluded evidence been allowed to be presented must exist. *Crane v. Commonwealth*, 726 S.W.2d 302, 307 (Ky. 1987); CR

-13-

61.01, KRE 103. Additionally, alleged errors regarding jury instructions are considered questions of law examined under a *de novo* standard of review. *Hamilton v. CSX Transp., Inc.*, 208 S.W.3d 272, 275 (Ky. App. 2006).

*Porter v. Allen*, 611 S.W.3d 290, 294 (Ky. App. 2020) (footnote omitted).

Our Court reviews a trial court's CR 12.02 dismissal *de novo*. *Seiller Waterman, LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 195 (Ky. 2020); *Hardin v. Jefferson County Bd. of Educ.*, 558 S.W.3d 1, 5 (Ky. App. 2018).

## III.    ANALYSIS

Pierson presents several issues on appeal:  (1) the trial court erred in admitting evidence of Pierson's suspended license; (2) the trial court erred in failing to exclude jurors for cause; and (3) the trial court erred in dismissing his bad faith claim against Liberty Mutual.  Because we disagree with the trial court's interpretation of KRS 186.640 and its subsequent evidentiary ruling regarding the suspended license, we need not address the issue of jury selection.

At the heart of this appeal is KRS 186.640, which provides:

Any driver involved in any accident resulting in any damage whatever to person or to property who is ineligible to procure an operator's license, or being eligible therefor has failed to procure a license, or whose license has been canceled, suspended or revoked prior to the time of the accident, shall be deemed *prima facie* negligent in causing or contributing to cause the accident.

-14-

Our courts have limited the application of KRS 186.640 since its inception. Just three years after the statute was enacted (then KS § 2739m–62), the former Court of Appeals addressed whether the rebuttable presumption created by KRS 186.640 requires a corresponding jury instruction. In *Tipton v. Estill Ice Company*, 279 Ky. 793, 132 S.W.2d 347 (1939), an unlicensed driver was involved in an accident and was sued for negligence. *Id*. at 349. The *Tipton* Court declined to require an instruction and "unhesitatingly h[e]ld that it was not competent for the Legislature to make the mere failure to secure operator's license *prima facie* evidence that the driver involved in an accident was negligent in causing or contributing to such accident." *Id.* at 350. The Court further noted that there was no showing that the driver was ineligible to procure a license,[5] and "the mere failure . . . to procure an operator's license prior to the accident had no 'natural and rational evidentiary relation to – or a logical tendency to prove the principal act.'" *Id.* (quoting *Commonwealth v. Kroger*, 276 Ky. 20, 122 S.W.2d 1006, 1007 (1938) ("Moreover, the right to prescribe for a rebuttable one is qualified to this extent— that the prescribed facts for creating the *prima facie* presumption shall have 'a natural and rational evidentiary relation' to, and a logical tendency to prove, the principal fact.")). Accordingly, the failure to procure a license is irrelevant and not

---

[5] At this time, the *Tipton* Court appeared to differentiate between failure to procure an operator's license and having had an operator's license suspended or revoked. *Tipton*, 132 S.W.2d at 350.

-15-

*prima facie* evidence when the failure does not have a dispositive effect on the cause of action.

In 2000, our Supreme Court had occasion to address KRS 186.640 in *Rentschler v. Lewis*, *supra*, this time in application to a suspended license. In *Rentschler*, it was discovered that the defendant involved in a parking lot collision had had his license suspended for "failure to attend alcohol classes following a prior alcohol-related motorcycle accident[.]" *Rentschler*, 33 S.W.3d at 519. The trial judge held the evidence of the suspended license inadmissible and refused to provide a jury instruction regarding the rebuttable presumption created by KRS 186.640. *Id*. In its discussion, the *Rentschler* Court discussed the admissibility of a suspended license under KRE 401 and KRS 186.640 in tandem:

> Prior to [the enactment of KRS 186.640], our predecessor Court had held in *Moore v. Hart*, 171 Ky. 725, 188 S.W. 861 (1916) that evidence that a motor vehicle was unregistered and its operator unlicensed, both in violation of applicable statutes, was inadmissible "unless such violation has some causal connection with the producing of the injury." *Id*., 188 S.W. at 864. Some sixteen years after the enactment of KRS 186.640, our predecessor Court held in *Baber v. Merman*, Ky., 249 S.W.2d 142 (1952) that "evidence that the plaintiff . . . had no driver's license was irrelevant" to the issue of contributory negligence. *Id*. at 144. These cases are consistent with the definition of relevancy now contained in KRE 401, *viz*:
>
> > "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the

> determination of the action more probable or less probable than it would be without the evidence.
>
> The fact of consequence in this case is whether the manner in which [the defendant] operated his vehicle was a substantial factor in causing the accident. His status as a licensed or unlicensed driver would not tend to prove or disprove that fact. Therefore, the trial judge *correctly concluded that such evidence was irrelevant*, thus inadmissible.

33 S.W.3d at 519 (emphasis added).

The *Rentschler* Court explained that evidence of a suspended license, even in light of KRS 186.640, is only relevant if it tends to prove or disprove that the manner in which the person operating the vehicle at issue was a substantial factor in causing the collision. If a suspended license is not a "fact of consequence" in whether a driver operates his vehicle in a negligent manner, evidence of that suspension is irrelevant and, therefore, inadmissible.

Consequently, we must determine whether the trial court appropriately allowed references to Pierson's suspended license. "It is within the discretion of the trial court to determine whether the probative value of proffered evidence is substantially outweighed by undue prejudice." *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 67 (Ky. 1996) (citing *Ford Motor Co. v. Fulkerson*, 812 S.W.2d 119 (Ky. 1991)).

> All relevant evidence is admissible, except as otherwise provided[.] "Relevant evidence" means evidence having

-17-

any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. The inclusionary thrust of the law of evidence is powerful, unmistakable, and undeniable, one that strongly tilts outcomes toward admission of evidence rather than exclusion. The language of KRE 403 is carefully calculated to leave trial judges with extraordinary discretion in the application and use of [KRE 403].

*Probus v. Commonwealth*, 578 S.W.3d 339, 346-47 (Ky. 2019) (internal quotation marks and citations omitted).

The trial court found that, without distinction, KRS 186.640 "creates a rebuttable presumption of negligence for a driver with a suspended license, and, therefore, testimony as to the driver's license shall be allowed." R. at 511. Without addressing *Rentschler*'s acknowledgement that evidence of a suspended license may be irrelevant and therefore inadmissible under certain circumstances, the trial court also later agreed with Hartline's averment that this evidence shows Pierson's inexperience and lack of competency riding a motorcycle.

We, like the *Rentschler* Court, cannot agree with this logic. Although Hartline maintains that the suspended license proves that Pierson had not ridden a motorcycle in years, the very collision at the center of this litigation disproves that line of logic. Although Hartline claims the suspended license proves Pierson's

-18-

inexperience riding a motorcycle, her own counsel elicited testimony from Pierson that he routinely operated motorcycles both before and after the collision while his license was suspended. The evidence affirmatively established that Pierson continued to ride motorcycles despite his unlicensed status and had done so for years. Therefore, we cannot conclude that the suspended license was relevant with respect to whether Pierson was an experienced rider.

Moreover, Pierson's license was suspended only for failure to pay ticket fines; therefore, all the suspension denotes is that Pierson did not pay his fines as required. The trial court noted that one of those tickets, received when Pierson was a teenager, was for failure to maintain lane. However, the suspension was solely for failure to pay ticket fines; had Pierson paid his fines as required, any evidence of this traffic violation would have been barred under KRE 609 and KRE 403. *Price v. Bates*, 320 S.W.2d 786, 789 (Ky. 1959) ("[T]he courts have generally refused to permit the cross-examination of a driver in civil actions as to prior arrests or convictions for traffic offenses, on the ground that the introduction of such evidence would lead to a consideration of collateral issues having no bearing on the question of a driver's negligence in the accident under consideration.").

To the extent that Pierson's suspended license is relevant to Pierson's skill as a motorcyclist, the trial court must still consider whether there is other, less

-19-

prejudicial evidence that may be used to support the same proposition. *See, e.g.*, *Hall v. Commonwealth*, 468 S.W.3d 814, 824 (Ky. 2015) ("[I]n exercising its discretion under Rule 403, a trial court must consider in the balancing test . . . other available evidence to prove the fact in issue."). Here, Hartline had other avenues through which to allege that Pierson was not an experienced rider, which she did in fact utilize. For example, Hartline's accident reconstructionist testified regarding a taped interview of Fogelsong upon which he relied in rendering his expert opinion. In that interview, Fogelsong stated that he believed Pierson to be an inexperienced motorcycle rider. Fogelsong, who had only just met Pierson on the day of the accident, expressed that he was not confident in Pierson's skills riding the high horse-powered motorcycle he rode that day.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. The former high court has previously found evidence of traffic violations to be so prejudicial as to require reversal in civil cases. *Price*, 320 S.W.2d at 789 ("We consider the evidence [of traffic violations] not only highly incompetent but of such prejudicial nature that, standing alone, it constitutes a sufficient reason for reversal of the judgment in this case.").

Here, the unduly prejudicial nature of the suspended license is illustrated by Hartline's closing argument. Hartline's counsel argued in closing, "If he just would have been obeying the law that states that he cannot operate a motorcycle or motor vehicle without a license, this accident doesn't take place." VR 8/22/19 at 9:17:13. This same argument that a defendant's "status as an unlicensed driver was relevant because he 'had no legal right to be on the highway when the accident occurred,'" was condemned by *Renztler* as "cruel and almost savage[.]" *Rentschler*, 33 S.W.3d at 519-20 (citations omitted).[6] Notwithstanding any probative value in introducing evidence of Pierson's suspended license, we hold that it is substantially outweighed by its prejudicial effect and should have been excluded pursuant to KRE 403.

Hartline argues that even if admission of the suspended license was erroneous, it was harmless error due to the nature of the jury instructions. According to Hartline, this is so because the jury ultimately only reached the instruction of whether Hartline had breached her duty of ordinary care. "The test

---

[6] Pierson challenges the constitutionality of KRS 186.640 facially and as applied by the trial court. Because we disagree with the trial court's interpretation of KRS 186.640 and the applicable case law, we need not address Pierson's constitutional challenge. As discussed by *Rentschler*, "the legislature [is] competent to create statutory presumptions, [so long as] the right to provide for a rebuttable presumption is qualified to the extent that the prescribed facts for creating the prima facie presumption shall have a natural and rational evidentiary relation to, and a logical tendency to prove, the principal fact." 33 S.W.3d at 520 (internal quotation marks and citations omitted). Pierson's argument that KRS 186.640 discriminates against individuals who cannot afford to pay their motor vehicle fines, as Pierson alleges he was unable, is rendered immaterial by the *Rentschler* and *Tipton* Courts' interpretations of KRS 186.640.

for harmless error is whether there is any reasonable possibility that absent the error the verdict would have been different." *Renfro v. Commonwealth*, 893 S.W.2d 795, 797 (Ky. 1995), *abrogated on other grounds by Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky. 1997) (citing *Crane v. Commonwealth*, 726 S.W.2d 302 (Ky. 1987)). "[I]f upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial." *Matthews v. Commonwealth*, 163 S.W.3d 11, 27 (Ky. 2005) (citation omitted).

Hartline relies upon *Renfro* in arguing that the error committed by the trial court was ultimately harmless. In *Renfro*, the court permitted an expert witness to testify that the appellant caused the collision as opposed to clarifying for the jury which factors the jury could use to determine causation. *Renfro*, 893 S.W.2d at 797.

> The testimony by the witness was a *single statement*. In reviewing the record, *the evidence against Appellant was overwhelming*. Law enforcement officers saw Appellant driving his vehicle erratically and at a high rate of speed. Toxicology reports established that Appellant was highly intoxicated. Witnesses saw Appellant's car, traveling very fast and in the passing lane, enter the intersection against the red light and strike a second vehicle, which then hit the victim.

*Id.* (emphasis added).

In comparison, evidence of the suspended license in this case was brought up in *voir dire*, opening statements, witness testimony, and closing arguments. Strategically, Pierson was forced to establish during *voir dire* that he was on the road illegally, even if it had little to no bearing on his ability to operate his vehicle. Moreover, Hartline's counsel was permitted to argue in closing that if Pierson had been following the law and not operating a motorcycle without a license, the accident would not have occurred. The case before us is a "he said, she said" case. Pierson and Hartline both presented evidence that they were not at fault, ultimately making this case one of credibility. Thus, the jury's determination that it believed Hartline and that she did not breach her duty of ordinary care necessarily determines that it did not believe Pierson. We find that it is reasonably possible that Pierson's suspended license affected his credibility.

Hartline also argues that Pierson "opened the door" to the admission of his suspended license by raising the issue first during *voir dire* and thereby waived any objection. She relies upon *Asher v. Commonwealth*, 275 S.W.2d 416, 418 (Ky. 1955), in which the appellant "made no objection" at trial but then complained on appeal. In rejecting that argument, the Court noted the lack of objection and that the appellant also introduced the same evidence himself. *Id*. at 418-19. In the present case, the trial court denied Pierson's motion *in limine* to exclude the evidence entirely and ruled prior to the start of trial that KRS 186.640

would allow reference to Pierson's suspended license at any point throughout the trial.  Our Supreme Court has explained that a motion *in limine* preserves the objection regardless of a party's choice to act first in introducing the unfavorable evidence:

> The evidence as presented through the plaintiffs' case obviously prejudiced the jury's award.  Left for the defendant to present after the plaintiffs had apparently concealed it, such evidence would have been even more devastating, adding insult to injury.  The appellee argues that we should not assume that if the plaintiffs had not gone forward with this evidence the defendant would have done so.  If such was not the defendant's intention, the time to say so was when the motion to exclude the evidence was made, thus mooting the issue.  The likelihood the defendant would not present this evidence after prevailing against the motion *in limine* borders on absurdity.

*O'Bryan v. Hedgespeth*, 892 S.W.2d 571, 574 (Ky. 1995).  If Pierson had not raised the suspended license in *voir dire*, he would have lost all opportunity to exclude potential jurors with prejudices from the jury.

Finally, we address the trial court's dismissal of Pierson's bad faith claim under CR 12.02.[7]  "CR 12.02(f) is designed to test the sufficiency of a

---

[7] Pierson claims that reversal is required because "Liberty Mutual did not truly challenge Pierson's complaint against it, but rather made a motion for summary judgment couched as a motion to dismiss."  Appellant's Brief at 21.  However, Liberty Mutual explicitly requested in its motion to dismiss that the trial court take judicial notice of the pleadings before it, including the jury's verdict and the judgment for Hartline.  Our Court has expressly recognized that considering matters of public record, including pleadings in the trial court record, does not convert a motion to dismiss into a motion for summary judgment.  *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 563-64 (Ky. App. 2017).

complaint[,]" and it is proper to grant such a motion only if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Hardin*, 558 S.W.3d at 5; *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002). Although Pierson requested that the trial court deny Liberty Mutual's motion to dismiss pending the outcome of his post-trial motions and appellate review, the trial court granted Liberty Mutual's motion to dismiss "in light of the jury's verdict" in favor of Hartline. R. at 677.

"An insurer's violation of the UCSPA creates a cause of action both for the insured as well as for those who have claims against the insureds, and the same standard applies in both types of cases." *Gale v. Liberty Bell Agency, Inc.*, 911 F. Supp. 2d 488, 495 (W.D. Ky. 2012).

> To succeed on [a] third-party suit, our decision in *Wittmer v. Jones*[, 864 S.W.2d 885 (Ky. 1993)] requires [a plaintiff] to show that: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; *and* (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed[.] Proof of this third element requires evidence that the insurer's conduct was outrageous, or because of his reckless indifference to the rights of others.
>
> Use of the conjunctive "and" in our *Wittmer* test is quite revealing—it combines the individual items of *Wittmer*, creating a prerequisite that all elements of the test must be established to prevail on a third-party claim for bad faith under the KUCSPA.

-25-

*Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 737-38 (Ky. 2016) (internal quotation marks, footnotes, and citations omitted).

With regard to the first *Wittmer* element, whenever liability is not "beyond dispute," a "defendant ha[s] a right to litigate its case" and is under "no duty to make an offer" unless and until it becomes "beyond dispute." *Lee v. Medline Protective Co.*, 904 F. Supp. 2d 648, 652 (E.D. Ky. 2012) (an insurer "is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts.") (citation omitted); *see also Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 890 (Ky. App. 1994). "[T]he injured person must first establish his claim against the wrongdoer in his action for negligence and thereafter be assured of the fruits of his victory by being permitted to collect from the indemnity company." *N.Y. Indem. Co. v. Ewen*, 221 Ky. 114, 298 S.W. 182, 185 (1927). In *Pryor v. Colony Insurance*, 414 S.W.3d 424, 432-33 (Ky. App. 2013), our Court explained:

> [T]he general rule declared in [the] seminal case [*Ewen*, 221 Ky. 114] is that a complainant must first establish liability before seeking indemnity from an insurer in an action based on the insured's negligence. *Id.* The prohibition of direct actions against insurers until liability has been established has remained the law in Kentucky. *See State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 808 S.W.2d 805, 808 (Ky. 1991); *Cuppy v. General Accident Fire and Life Assur. Corp.*, 378 S.W.2d 629, 632 (Ky. 1964); *Chambers v. Ideal Pure Milk Co.*,

245 S.W.2d 589, 591 (Ky. 1952); and *Ford v. Ratliff*, 183 S.W.3d 199, 203 (Ky. App. 2006).

. . . .

[A]n insurance company's violation of the UCSPA creates a private cause of action both for the named insured and for those who have claims against the named insured, and the same standards govern both types of cases. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). But a third-party claimant may only sue the insurance company under UCSPA when coverage is not contested or already established. *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 516 (Ky. 2006). And, as stated by Chief Justice Robert Stephens in his concurring opinion in *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989):

> An insured does not avail himself of this cause of action by merely alleging bad faith due to an insurance company's disputing or delaying payment on a claim. . . . An insurer's refusal to pay on a claim, alone, should not be sufficient to trigger the firing of this new tort.

However, this is not to say that a bad faith claim may not be brought at the same time as the underlying negligence claim. "[A]t trial the underlying negligence claim should first be adjudicated. Only then should the direct action against the insurer be presented." *Wittmer*, 864 S.W.2d at 891. As Justice Leibson explained in his dissenting opinion in *Federal Kemper Insurance Company v. Hornback*, 711 S.W.2d 844 (Ky. 1986):

> *A bifurcated procedure was the proper way to try the present case*. This procedure better protected the rights

-27-

of the insurance company/movant because it kept out of the contract phase evidence which was relevant to the issue of bad faith but unnecessary and possibly prejudicial to the insurance company in the trial of the preliminary question of liability under the insurance contract.

*Id*. at 849 (Leibson, J., dissenting) (emphasis added).[8]

Before the trial court, Liberty Mutual argued that Pierson's claims are not sustainable in light of the jury's verdict in favor of Ms. Hartline:

As a matter of law, the jury's verdict means that [Hartline's] liability was never "beyond dispute," and therefore [Pierson's] bad faith claims must fail. *See* [*Wittmer*, 864 S.W.2d at 890]; *Coomer v. Phelps*, 172 S.W.3d 389 (Ky. 2005). Moreover, because the jury refuted Hartline's liability, Liberty Mutual has never had any obligation to pay [Pierson's] claim under the terms of the applicable insurance policy – another requisite element of a bad faith claim.

R. at 622. Because the jury's verdict must be reversed, however, it cannot serve as the basis for dismissal of Pierson's bad faith claim. *Bruce v. Commonwealth*, 465 S.W.2d 60, 61-62 (Ky. 1971) (reversal of a judgment "extinguishes *in toto* the jury verdict upon which it was based"). A new trial is required regarding Pierson's negligence claim; should Pierson prove successful upon retrial, he should be

---

[8] Justice Leibson's dissenting opinion was later incorporated by reference in the Kentucky Supreme Court's majority opinion in *Curry v. Fireman's Fund Insurance Company*, 784 S.W.2d 176, 178 (Ky. 1989).

permitted to prove his bad faith claim.  Accordingly, we reverse and remand on the issue of bad faith.

## IV.  CONCLUSION

In light of the foregoing, we reverse and remand for a new trial and proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Jay R. Vaughn
Sarah N. Emery
Fort Wright, Kentucky

Jonathan Rabinowitz
Lexington, Kentucky

Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE LIBERTY
MUTUAL INSURANCE
COMPANY:

Douglas W. Langdon
Christopher G. Johnson
Allison W. Weyand
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE STEPHANIE
HARTLINE:

Robert Steinmetz
Louisville, Kentucky

Samuel A. Gradwohl
Cincinnati, Ohio